850 So.2d 544 (2003)
FLORIDA MUNICIPAL INSURANCE TRUST, Appellant,
v.
VILLAGE OF GOLF, a municipal corporation, Appellee.
No. 4D01-4892.
District Court of Appeal of Florida, Fourth District.
April 9, 2003.
Order Denying Rehearing and Certifying Question August 6, 2003.
*545 Michael T. Burke of Johnson, Anselmo, Murdoch, Burke & George, Fort Lauderdale, for appellant.
Kenneth G. Spillias, Kevin S. Hennessy and Eric Ash of Lewis Longman & Walker, PA., West Palm Beach, for appellee.
KLEIN, J.
The primary issue we address in this appeal is whether an insurer, when the policy excludes coverage, can be estopped to deny coverage if it negligently investigates a claim before suit is filed, and the insured is prejudiced. The jury found appellant insurer was estopped from denying coverage, but the insurer argues that a verdict should have been directed in its favor. We conclude that estoppel can apply here, but reverse for a new trial because of an erroneous jury instruction.
The claim against the insured was that chlorine gas leaking from its water treatment plant damaged claimant's pepper crop. The claimant, a neighboring farmer, notified the insured of the claim six days after the gas leak, and the insured immediately informed the insurer. Within a few days the insurer retained counsel and a *546 field adjuster to investigate. The insurers settled several small claims of parties other than this claimant.
Three months later the claimant notified the adjuster of crop damage which he attributed to the chlorine, and the adjuster, who was not experienced in evaluating crop damage, visited the farm and took photographs.
About ten months after the leak the claimant's attorney sent a letter claiming $1,600,000 in crop damage and, three months after that, filed suit. The insured promptly forwarded the letter as well as the complaint to the insurer. Two weeks later, the insurer notified the insured that there was no coverage because of the pollution exclusion contained in the comprehensive general liability policy. The insured then retained its own counsel and ultimately settled with the claimant for $237,500.
The insured then brought this suit against the insurer, claiming coverage, or in the alternative that it was prejudiced by the insurer's inadequate investigation, which estopped the insurer from denying coverage. The jury found no coverage under the policy, but did find estoppel, awarding the insured the amount of the settlement, as well as attorney's fees and litigation costs incurred in defending the claim.
The insured relies on the theory of estoppel which this court first recognized in Florida in Cigarette Racing Team, Inc. v. Parliament Insurance Co., 395 So.2d 1238, 1239-40 (Fla. 4th DCA 1981), in which we explained:
The issue on appeal is whether this case is controlled by the general rule that insurance coverage cannot be extended by waiver or estoppel or the exception to the rule that, when an insurance company assumes the defense of an action with knowledge of the lack of coverage, it may be estopped to raise the coverage defense. Admittedly, the general rule is that the doctrines of waiver and estoppel will not operate to create coverage in an insurance policy where none originally existed. Six L's Packing v. Florida Farm Bureau Mutual Insurance Co., 268 So.2d 560 (Fla. 4th DCA 1972), cert. discharged, 276 So.2d 37 (Fla.1973). There is an exception to the rule, however, which provides that "when an insurance company assumes the defense of an action, with knowledge, actual or presumed, of facts which would have permitted it to deny coverage, it may be estopped from subsequently raising the defense of non-coverage." City of Carter Lake v. Aetna Casualty and Surety Co., 604 F.2d 1052, 1059 (8th Cir.1979). Accord, Pacific Indemnity Co. v. Acel Delivery Service, Inc., 485 F.2d 1169 (5th Cir.1973), cert. denied 415 U.S. 921, 94 S.Ct. 1422, 39 L.Ed.2d 476 (1974); Fidelity and Casualty Company of New York v. Riley, 380 F.2d 153 (5th Cir.1967); Insurance Company of North America v. National Steel Service Center, Inc., 391 F.Supp. 512 (N.D.W.Va.1975), aff'd, 529 F.2d 515 (4th Cir.1976). See also: 7C J. Appleman, Insurance Law and Practice, s 4692 (1979).
Cigarette Racing Team was approved by our supreme court in Doe for Doe v. Allstate Ins. Co., 653 So.2d 371 (Fla.1995). The court observed in Doe:
[T]he holding in Cigarette Racing Team properly takes into account the import of an insurer's obligation to defend within a policy of liability insurance. This obligation has long been recognized by this Court. In fulfilling its promissory obligation to defend, the insurer employs counsel for the insured, performs the pretrial investigation, and controls the insured's defense after a *547 suit is filed on a claim. The insurer also makes decisions as to when and when not to offer or accept settlement of the claim.... This obligation amounts to a fiduciary duty requiring the exercise of good faith....
Thus, when the insurer undertakes the defense of a claim on behalf of one claiming to be an insured, we have recognized substantial duties on the part of both the insurer and the insured. If an insurer erroneously begins to carry out these duties, and the insured, as required, relies upon the insurer to the insured's detriment, then the insurer should not be able to deny the coverage which it earlier acknowledged. However, we clearly state that the insured must demonstrate that the insurer's assumption of the insured's defense has prejudiced the insured. It is the fact that the insured has been prejudiced which estops the insurer from denying the indemnity obligation of the insurance policy. (citations omitted).
Doe, 653 So.2d at 373-74.
In the present case the insured, in order to demonstrate estoppel, presented the testimony of Richard Batterson, an expert in the handling and adjusting of claims. Batterson reviewed the pleadings in the claimant's lawsuit, depositions, the insurer's claims manual, various correspondence and the code of ethics for adjusters. Batterson opined that the insurer did not properly handle the claim against the insured. He testified that insurer investigated and settled several small claims arising from the chlorine gas leak without issuing a reservation of rights letter which, he added, is the first thing the insurer should have done. Batterson further stated that without a reservation of rights the insured receives a false sense of security: the insured infers that coverage exists, that someone is settling its claims, and that it has protection. A reservation of rights also informs the insured of a potential disclaimer of coverage, affording it the opportunity to investigate the case on its own, hire its own lawyers, and obtain its own experts. Here, Batterson contended, insured did nothing because it felt it was protected under the insurance policy.
Batterson also stated that the adjuster should not have merely relied on the claimant's representations, but should instead have investigated, taken recorded statements, and called in experts if needed, particularly where the adjuster is uncertain of damage causation. Here, the adjuster lacked experience with the type of claim at issue and should have retained an expert to analyze the crop.
Although Batterson admitted that no coverage existed under the policy because of the pollution exclusion, he gave the opinion that without a reservation of rights, carrier relinquished its right to exclude coverage.
The insurer argues that estoppel under Doe can apply only to conduct occurring after the insurer undertakes the defense of a lawsuit and that in this case all of the conduct alleged to constitute estoppel occurred prior to suit having been filed. We do not agree because we find nothing in Doe, or any other cases cited, which limits estoppel to conduct occurring after suit is filed.
As our supreme court explained in Shuster v. South Broward Hospital District Physicians' Professional Liability Insurance Trust, 591 So.2d 174 (Fla.1992):
[W]hen an insured has surrendered all control over the handling of a claim to the insurer, the insurer assumes "a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured." The insurer has the duty to investigate *548 the facts and give fair consideration to the claims pending.
Id. at 176 (quoting Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783, 785 (Fla. 1980)).
The undertaking of a defense includes both investigating the accident as well as defending the lawsuit. An investigation which negligently fails to preserve crucial evidence can be far more damaging to the ability of an insured to defend a claim than anything which occurs after suit is filed.
In the present case the insured presented evidence showing that when the insurer investigated, it was negligent in failing to determine if the crops were damaged by the chlorine leak. When, thirteen months later, the insurer first denied coverage, it was too late for the insured to do a proper investigation which could have put it in a stronger position to demonstrate that there was no causal relationship. The court did not, accordingly, err in submitting estoppel to the jury.
We do agree with the insurer, however, that the trial court erred in instructing the jury on section 627.426(2)(a), Florida Statutes (1995) which provides:
A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless within thirty days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by hand delivery.
The "coverage defense" contemplated by this statute "means a defense to coverage that otherwise exists." AIU Ins. Co. v. Block Marina Inv., Inc., 544 So.2d 998, 1000 (Fla.1989). This statute does not, as AIU makes clear, apply where, as in this case, there is "a complete lack of coverage for the loss sustained." Id. State Farm Mut. Auto. Ins. Co. v. Hinestrosa, 614 So.2d 633 (Fla. 4th DCA 1993)(section 627.426(2)(a) does not apply where there is no coverage under policy).
Instructing the jury on this statute was tantamount to telling the jury it had to return a verdict for the insured, because it was undisputed that the insurer had not complied with the statute. Accordingly, we cannot agree with the insured that the instruction was harmless.
The insurer also argues that it could be liable for a settlement of the claim only up to the $100,000 limit provided in our waiver of sovereign immunity statute, section 768.28. The insurer recognizes, however, that the claimant could receive compensation in excess of $100,000 through a claims bill. If the claimant were successful in having the legislature pass a claims bill, it would be paid with funds of the insured, not general revenue. See e.g., Bonvento v. Bd. of Pub. Instruction, 194 So.2d 605 (Fla.1967). We do not accordingly agree with the insurer's argument that the insured's liability for this claim was as a matter of law limited to $100,000.
We have considered the other issues raised by the insurer and find them to be without merit. We therefore reverse and remand for a new trial on count III of the complaint, which alleged estoppel.
LEVIN, STEVEN J., Associate Judge, concur.
FARMER, J., dissents with opinion.
FARMER, J., dissenting.
In spite of an insurance policy expressly excluding coverage for the claim sued on, the majority concludes that the carrier is estopped from denying coverage as a matter *549 of law.[1] Because the majority's decision is contrary to the Florida Supreme Court decisions against creating insurance coverage by estoppel, I dissent.
At the beginning, it is appropriate to observe that this controversy does not involve an unsophisticated consumer buying, say, essential medical, automobile or homeowners insurance. Rather than an individual, the insured here is a municipal corporation. As a municipality, this city either employs experts on insurance or has access to them. Moreover, this particular city has a long affiliation with this particular insurance carrier, having purchased annual comprehensive general liability (CGL) policies from it for a number of years. This long relationship between insured and carrier was presumably profitable to both, but it is not likely to survive this decision.
The specific coverage at issuea claim for damages from "pollution" as a result of the emission of a toxic substanceis one that seems to be generally excluded from CGL policies in Florida, probably because the carrier charges an additional premium for this kind of coverage. See Deni & Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135 (Fla.1998) (holding that CGL insurance policies' pollution exclusions sufficiently barred coverage for claims arising from ammonia spilled from blueprint machine in office building and from an insecticide sprayed on bystanders).[2] Rather than encouraging an insured in the position of this city those who regularly use toxic chemicals to have coverage for toxic emissions harming people and property, today's decision may tempt other cities and corporations to forego paying the additional premium in the hope that they too can coax the coverage out of the judiciary.
The court's largesse in giving coverage to an insured, who elected not to pay for it, is unusually misplaced in this case. The issue turns on the carrier's conductlong before any lawsuits were filedin attempting to assist its insured by adjusting prospective claims after the escape of chlorine gas from the city's water treatment plant. Even though coverage for the occurrence was clearly and unequivocally excluded by the CGL policy, the carrier foreswore "reserving its rights" and proceeded to assist its insured in dealing with its residents and citizens whose property or persons had been exposed to the emission.
In fact, the carrier even paid a number of claims, each small in amount, adding up to about $20,000. Doubtless, this was not simply the charitable bent of a beatific insurance carrier. Doubtless, the carrier wished its long relationship with the city to continue and thought that by assisting in *550 the adjustment of small claims arising from the exposure, it could generate even longer lasting goodwill and further prolong what had been a profitable relationship. And doubtless, too, the city knew exactly what the carrier was doing and was not misled into believing that the policy was being effectually rewritten by the carrier's solicitude.
The carrier's initial handling of the prospective claim that ultimately did lead to a lawsuit against the insured is essentially this. Six days after the gas leak, the claimant, a grower of peppers, notified the insured of a potential claim for damages to its crops as a result of the chlorine exposure. In a conversation with the adjustor, claimant was not sure yet whether any crops had been actually damaged from the exposure.[3] No amount of dollar loss was stated or discussed in this initial exchange. The carrier was not led to understand that the value of lost peppers was any greater than the other small claims carrier agreed to pay. In fact it was some ten months after the emission before the pepper grower specified for the first time that it would claim damages of $1.6 million. When the grower finally filed suit several months after that, the carrier promptly disclaimed coverage and a defense.
It needs to be said that the precise aspect of the carrier's conduct said to result in the estoppel is both benign and understandable. For in its attempted adjustment of these small claims, the carrier is accused of not incurring the expense of hiring professionals familiar with this kind of toxic emission, and of not acquiring and assembling the full extent of evidence that would reveal or refute any damage caused by the emission. That is to say, a carrier who had not agreed to cover a claim, is accused of failing to act like a carrier who had agreed to cover the claim.
Notice what is not said. No one has accused the carrier of agreeing to preserve evidence which it then lost or destroyed. The carrier is not charged with spoliation of evidence. On the contrary, a carrier who was being a good citizen with its insured, by gratuitously paying several small claims that were clearly not covered by the policy, is accused of not making the substantial expenditures for the kind of investigation that would have been expected if there were coverage and there was a likelihood of litigation asserting some large claims. This is a curious basis on which to create insurance coverage by estoppel.
The insured's claim of estoppel is based almost entirely on expert testimony. Its expert testified that shortly after the emission occurred and before any suits were filed the carrier should have: (1) determined coverage; (2) issued a reservation of rights letter; (3) refused to pay any claims without a reservation of rights; (4) hired an expert on plant biology and their reactions to toxic emissions; and (5) investigated and verified the statements of the pepper grower. The expert thought that without a reservation of rights letter an insured develops a false sense of security and comes to believe that coverage excluded by the policy nevertheless exists (presumably in spite of the clear policy language excluding coverage).[4] Although he conceded that the pollution exclusion eliminated coverage for the chlorine emissions, he contended nevertheless that the carrier *551 ultimately relinquished its right to exclude coverage by omitting to assert a "reservation of rights."
Under this court's disposition, what carrier faced with the same circumstance will now do anything to assist an insured similarly situated? Insurance carriers for cities and counties, and large corporations as well, will now tell their insured instead that there is no coverage, and therefore no assistance and no help, and that they will have to fend for themselves. Is this the kind of world the majority really wants to create? I daresay such a world conflicts with the one envisioned by the supreme court in its cases carefully limiting the circumstances on which insurance coverage can be created by estoppel.
In Florida, the rule is that waiver or estoppel cannot create or extend coverage. Doe v. Allstate Ins. Co., 653 So.2d 371, 373 (Fla.1995); AIU Ins. Co. v. Block Marina Inv., Inc., 544 So.2d 998 (Fla.1989); Crown Life Ins. Co. v. McBride, 517 So.2d 660 (Fla.1987); Six L's Packing Co. v. Fla. Farm Bureau Mut. Ins. Co., 268 So.2d 560, 563 (Fla. 4th DCA 1972), adopted, 276 So.2d 37 (Fla.1973). The insured argues, however, that the Claims Administration Statute (CAS) created a duty to defend the claimant's lawsuit against the insured and that the violation of that duty resulted in an extension of coverage to the claim in suit.[5] The insured places particular emphasis on the following CAS provision:
"A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless within thirty days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by hand delivery...."[6]
The insured entirely misunderstands the domain of the CAS, which has been authoritatively construed by the supreme court.
In fact, the same argument under the CAS was raised and rejected in AIU Insurance. There, the court held that the term "coverage defense" as used in the CAS does not refer to a clear exclusion from coverage or the utter failure of the policy to cover the claim in any sense. As the AIU Insurance court explained:
"construing the term `coverage defense' to include a disclaimer of liability based on an express coverage exclusion has the effect of rewriting an insurance policy when the [CAS] is not complied with, thus placing upon the insurer a financial burden which it specifically declined to accept. Such a construction presents grave constitutional questions, the impairment of contracts and the taking of property without due process of law. Therefore, we hold that the term `coverage defense,' as used in the [CAS], means a defense to coverage that otherwise exists. We do not construe the term to include a disclaimer of liability based on a complete lack of coverage for the loss sustained. Under this construction, for example, if the insurer fails to comply with the requirements of the statute, it may not declare a forfeiture of coverage which otherwise exists based on a breach of a condition of the policy. However, its failure to comply with the requirements of the statute will not bar an insurer from disclaiming liability where a policy or endorsement has expired or where the coverage sought is *552 expressly excluded or otherwise unavailable under the policy or under existing law." [e.s.]
544 So.2d at 1000. Thus, as Judge Gunther also recognized for this court in Country Manors Ass'n v. Master Antenna Systems, Inc., 534 So.2d 1187, 1195 (Fla. 4th DCA 1988), "[a]n insurer does not assert a `coverage defense' where there was no coverage in the first place."
The AIU Insurance court also addressed whether its construction of the CAS was in conflict with its previous decision in Crown Life, one of the cases principally relied on by the insured and the majority. In Crown Life, the court was asked by certified question: "May the theory of equitable estoppel be utilized to prevent an insurance company from denying coverage?" In its initial short response, the court said: "For the reasons set forth below, we answer the certified question in the affirmative to the limited extent expressed herein." [e.s.] 517 So.2d at 661.
In explaining its answer, the Crown Life court first began with the same general rule: namely, that "estoppel may be used defensively to prevent a forfeiture of insurance coverage, but not affirmatively to create or extend coverage." 517 So.2d at 661. The court then recognized an exception to the general rule that:
"the doctrine of promissory estoppel, a qualified form of equitable estoppel ... applies to representations relating to a future act of the promisor rather than to an existing fact." 517 So.2d at 661-62. The Crown Life court stressed, however, this is a limited exception that:
"only applies where to refuse to enforce a promise, even though not supported by consideration, `would be virtually to sanction the perpetration of fraud or would result in other injustice.' " 517 So.2d at 662. In applying the exception to the case then under review, however, the Crown Life court determined that the claimant had failed to prove even this limited estoppel by clear and convincing evidence and reversed the district court.[7]
More recently, in Doe, the court discussed another limited exception to the rule that coverage will not be added by estoppel. This exception involves conduct by a carrier who has provided a defense of its insured after a claimant has brought suit for damages and the carrier has thereupon assumed control of the defense, even though the claim was excluded from or not covered by the policy.[8] In approving this "negligent defense" exception, the court made clear that it is based on the carrier's assumption of sole control of the defense of a disputed claim which results in prejudice to the insured in the defense of the suit.
This specific prejudice, the court Doe explained, is tied to the fiduciary nature of an insurance carrier's defense of an insured in a lawsuit. The Doe court explained:
"In fulfilling its promissory obligation to defend, the insurer employs counsel for the insured, performs the pretrial investigation, *553 and controls the insured's defense after a suit is filed on a claim. ... This obligation amounts to a fiduciary duty requiring the exercise of good faith. The insured has the reciprocal obligation to allow the insurer to control the defense and to cooperate with the insurer." [e.s., c.o.]
653 So.2d at 373-74. The Doe court added:
"Thus, when the insurer undertakes the defense of a claim on behalf of one claiming to be an insured, we have recognized substantial duties on the part of both the insurer and the insured. If an insurer erroneously begins to carry out these duties, and the insured, as required, relies upon the insurer to the insured's detriment, then the insurer should not be able to deny the coverage which it earlier acknowledged. However, we clearly state that the insured must demonstrate that the insurer's assumption of the insured's defense has prejudiced the insured. It is the fact that the insured has been prejudiced which estops the insurer from denying the indemnity obligation of the insurance policy." [e.s.]
653 So.2d at 374. The court emphasized that AIU Insurance and Crown Life are consistent with both Cigarette Racing Team and Doe. In other words, none of them change the basic thrust and broad application of the general rule of no coverage by estoppel.
Doe also cited Shuster v. South Broward Hospital District Physicians' Professional Liability Insurance Trust, 591 So.2d 174, 176 (Fla.1992), and Boston Old Colony Insurance Co. v. Gutierrez, 386 So.2d 783, 785 (Fla.1980).[9]Shuster involves a bad faith claim by a physician against his medical malpractice carrier for settling and paying three claims made against him by his patients. Although he claimed that the carrier should not have settled these claims without first consulting him, the court concluded that the policy language gave the carrier "the discretion to settle cases for amounts within the policy limits, regardless of whether the claim is frivolous or not." 591 So.2d at 177. Shuster does not support the majority's conclusion. Boston Old Colony is but a mere expression of the possibility of the same exception without being applied to the case at hand.
In other words, the general rule of no insurance coverage by waiver or estoppel is broadly applied. Under the supreme court decisions, the exception must be narrowly employed and only to correct a manifest injustice arising from the carrier's conduct that is either fraudulent in nature or perpetrates a substantial injustice on the insured. As the careful limitation on the exception suggests, the fear is that giving any estoppel a wide sweep would allow a broad rule with constitutional uncertainties to be supplanted by what is strictly intended to be a rare and limited remedy.
No one suggests that the fraud exception of Crown Life is even remotely applicable here. That leaves only the "negligent defense" exception discussed at length in Doe. The highlighted words I have quoted from that opinion betray the essential truth that its exception cannot come into play until there is a suit by a claimant against the insured. If in that circumstance, a carrier whose policy has clearly excluded the claim nevertheless assumes the defense of the claim to the *554 prejudice of the insured, that carrier will not be heard to assert the exclusion.
But that exception has no application here because the carrier never assumed any defense of the insured. Within 15 days after the insured sent suit papers to the carrier, it denied both coverage and a defense of the pepper grower's lawsuit. The Doe exception requires a real live civil action on the claim against the insured. See Smith v. Gen. Acc. Ins. Co. of Amer., 641 So.2d 123, 124 (Fla. 4th DCA 1994) ("The duty to defend is determined solely by the allegations in the complaint against the insured, not by the insured's defenses.").
Without a lawsuit on a claim making specific allegations against an insured that can be measured against the policy coverage, a claim is merely inchoate, a future event waiting to happen. There is no compulsion on the insured to pay an inchoate claimno legal mechanism to force the insured to assume any obligation on it until there is a lawsuit that might result in a judgment against the insured.
The majority seems to worry that the Doe exception might be abused by carriers if it should be limited only to the defense of suits brought against the insured. They seem to fear that presuit conduct by a carrier might nevertheless prejudice an insured. I can think of one circumstance where their fears have some validity. If the insured acquires evidence that might support the insured in any suit brought by a claimant, and entrusts that evidence to the carrier who then loses or destroys it, the insured ought to have some remedy from the carrier. I agree. And the remedy already recognized by the law is an action for spoliation of evidence. In this case, however, the record does not support the conclusion that the carrier lost or failed to preserve evidence entrusted to the carrier before any action on the claim was filed against the insured. In fact, the case below was tried not on the theory that the carrier lost evidence but on the theory that it was negligent in failing to investigate and acquire any.
The majority hold that the CAS has no application when the issue is estoppel to assert the absence of coverage. But the essential thrust of the CAS is precisely to address the circumstances when the carrier will be estopped to assert a policy provision. As AIU Insurance makes clear, however, the CAS cannot be used to create coverage by estoppel because to do so would raise constitutional defects by impairing an obligation of contract. Thus, the estoppel permitted by the CAS is limited to other policy clauses the breach of which may result in a forfeiture of coverage provided by the policy.
Under the CAS, no conduct of the carrier in good faith investigation of a possible claim against the insured can result in coverage where the policy explicitly excludes coverage for the claim. See § 627.426(1)(c) ("none of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of any provision of a policy: ... investigating any loss or claim under any policy or engaging in negotiations looking toward a possible settlement of any such loss or claim."). It is apparent that the insured's theory of estoppel is in direct conflict with this clear text from the CAS. Surely the supreme court did not mean to allow an estoppel on the basis of conduct clearly permitted by the CAS. Hence, there was no jury question presented, and thus the jury's verdict does not matter. If it did, the evidence fails to support the claim of coverage by waiver or estoppel.
The insured also argues that the carrier's failure to assert a reservation of rights during the presuit investigation results in coverage by waiver. That argument is *555 also contrary to the CAS. Under the CAS, any delay in failing to assert a reservation of rights may result in an estoppel to assert one of the other policy provisions e.g., a provision barring any settlement by the insured without the express consent of the carrierbut it cannot operate to create coverage by estoppel where the policy clearly excludes coverage for the particular claim. AIU Ins., 544 So.2d at 1000 (failure to comply with requirements of CAS will not bar insurer from disclaiming liability where coverage sought is expressly excluded). Thus, the testimony by the insured's expert that a delay in reserving the right to disclaim coverage operates to prejudice the insured and therefore results in coverage by estoppel is at odds with existing law. It is therefore legally insufficient to create a factual issue.
I would reverse for the entry of judgment declaring that as a matter of law there can be no coverage by estoppel under the facts construed in favor of the insured. I would explicitly hold that a carrier who has clearly excluded coverage for a specific class of prospective claims owes no duty to its insured to spend money investigating such claims before any legal action is brought on it.

ON MOTIONS FOR REHEARING & CERTIFICATION
PER CURIAM.
We deny appellant's motion for rehearing, but certify the following question as one of great public importance:
CAN THE ESTOPPEL THEORY APPROVED IN DOE v. ALLSTATE INSURANCE CO., 653 So.2d 371 (Fla. 1995), BE APPLIED TO CONDUCT ARISING OUT OF THE INSURER'S INVESTIGATION OF A CLAIM BEFORE THE CLAIMANT HAS FILED A LAWSUIT?
FARMER, C.J., KLEIN, J., and LEVIN, STEVEN J., Associate Judge, concur.
NOTES
[1] The relevant provision in the policy in question excludes coverage for:

"any claim for bodily injury or property damage (including the loss and use thereof) caused by, contributed to or arising out of the actual or threatened discharge, dispersal, release, or escape of smoke, vapors, soot, fumes acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, pollutants or contaminants into or upon the land, the atmosphere or any course or body of water, whether above or below the ground."
The claim here was based on a leak of chlorine gas from the water treatment plant operated by the city. A neighboring property owner who grows peppers commercially claimed that the gas leak destroyed its crop. It is indisputable that the unplanned discharge of the chlorine gas from the city's water treatment plant is well within this pollution exclusion.
[2] Pollution coverage in this case should not be seen as a mere afterthought by an unsuspecting insured who had no basis to anticipate a need for such coverage. This city operates a water treatment plant in which it routinely uses toxic chemicals.
[3] If expert testimony is accurate, the science is against the grower. It appears that chlorine damage to crops manifests itself within hours or a few days and should have been obviousif it occurredby the time the grower first notified the insured and carrier.
[4] This expert does not purport to explain why the law should prefer "false sense of security" as against clear contractual language to the contrary.
[5] § 627.426, Fla. Stat. (1995). The incident occurred in 1995.
[6] § 627.426(2)(a), Fla. Stat. (1995).
[7] To be sure, Crown Life is a tortured decision. The court was split 4-3, with no less than three opinions attempting to justify the creation of the "fraud" estoppel exception. Only two justices joined in the "majority" opinion, each of the other two in the majority writing their own opinions. While close decisions are nonetheless still precedent for the result joined in by the simple majority, it is questionable whether much more than the simple recognition of the fraud exception should be gleaned from any of this.
[8] The supreme court derived this exception from our decision in Cigarette Racing Team, Inc. v. Parliament Ins. Co., 395 So.2d 1238 (Fla. 4th DCA 1981).
[9] Nothing in Shuster even remotely suggests that the carrier may be estopped to deny coverage simply because of negligence in investigating a prospective claim before any suit has been filed.