**[DO NOT PUBLISH]**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

----------------------------------------

No. 04-13620
Non-Argument Calendar

----------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 2, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 02-23548-CV-STB

SOLAR TIME LIMITED,

       Plaintiff-Appellant-Cross-Appellee,

      **versus**

XL SPECIALTY INSURANCE COMPANY,
d.b.a. Intercargo Insurance Company,

       Defendant-Appellee-Cross -Appellant.

-------------------------------------------------------------------

**Appeals from the United States District Court
for the Southern District of Florida**

-------------------------------------------------------------------

**(August 2, 2005)**

**Before, EDMONDSON, Chief Judge, BLACK and PRYOR, Circuit Judges.**

PER CURIAM:

In this diversity jurisdiction case about an insurance coverage dispute, Solar Time Ltd. ("Solar Time") appeals the magistrate judge's final judgment, after a bench trial,[1] in favor of XL Specialty Insurance Co. ("XL").  And XL has cross-appealed some of the magistrate judge's determinations.  No reversible error has been shown; we affirm.

## BACKGROUND

XL issued claims-made Errors and Omissions ("E&O") policy to Lancer International Corp., a freight forwarder, effective from 31 December 1993 through 31 December 1996, with a $100,000 annual limit.  XL then issued to Lancer a policy with identical provisions effective from 1 January 1997 through 31 December 1997.  The policies were diminishing policies: they were depleted by defense costs.

---

[1] The parties consented in writing to trial and final disposition of the issues in this case by a magistrate judge.

Condition 2 of both policies states that XL only will cover a claim based on a negligent act that occurred during the policy period: and only if the claim first is made during the policy period and reported to XL in writing while the agreement is in effect. Both policies also contain Condition 7, which required Lancer to notify XL immediately in writing of a negligent act, error, or omission, even if no claim had been made.

On 26 August 1996, Lancer received a letter from a shipper, Three HHH, Inc., advising Lancer of the loss of $156,000 of watches shipped to Solar Time.[2] But XL did not receive notice of the loss from Lancer until 16 June 1997: when XL received from its sister company[3] demands made in early June 1997 from Solar Time to Lancer for payment for the value of the watches.[4]

On 19 June 1997, Ben Llaneta, an XL vice president who handled this claim, sent a form letter to Lancer acknowledging receipt of the notice of claim, describing the coverage of the policy, and reserving XL's rights "until it has been

---

[2] Lancer had used a company named Tie Cargo Corp. to ship the watches.

[3] Claims reported by an insured were made to XL's sister company, Trade Insurance Services, Inc., which acted as XL's insurance agent.

[4] In its response to XL's cross-appeal, Solar Time suggests in a footnote that a dispute exists about whether XL received notice of the loss within the policy period. But Solar Time failed to present substantive argument, in its initial appellate brief, on the district court's determination that Solar Time did not establish that notice of the loss was given in 1996. This issue is abandoned. See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004).

3

afforded the opportunity to fully investigate this claim." The next day, Llaneta sent a letter to Lancer observing that Lancer had not notified XL of the Solar Time loss claim until nearly ten months after the events leading to the claim. Llaneta pointed to Condition 7; he did not mention Condition 2. But Llaneta noted that XL was reserving its right to deny coverage if its "ability to defend, investigate or otherwise resolve this claim are [sic] prejudiced as a result of this late notice." Llaneta also mentioned that XL had retained a law firm to represent Lancer.

Llaneta stated that the documents attached to the claim report had enough information for him to determine what coverage defenses were available to XL. And Llaneta admitted that, when he sent the letters to Lancer, he knew that Condition 2 had not been met.

In September 1997, Llaneta notified Lancer that XL had received the suit by Three HHH against Lancer. This letter again reserved XL's right to deny coverage; but the letter did not decline coverage. XL then paid for the defense of Lancer. XL retained another law firm to represent it on coverage issues: this firm sent Lancer a letter in October 1999 advising Lancer that XL was renewing its reservation of rights. The letter referenced Condition 7 but not Condition 2.

In January 2000, XL filed a suit for declaratory relief against Solar Time and Lancer, alleging that no coverage existed due to late notice. The complaint

cited Condition 7 but not Condition 2. XL voluntarily dismissed the complaint in August 2000. At some point in 2000, Lancer went out of business.

In March 2001, Solar Time obtained a $225,975.83 total judgment against Lancer, in excess of the $100,000 policy limit. In June 2001, Lancer executed a release of XL from all claims in return for up to $5,000 in defense costs for the appeal from the underlying judgment. The release mentioned Condition 7 but not Condition 2.

In November 2002, Solar Time, as judgment creditor of Lancer, filed this suit against XL, alleging statutory and common law bad faith for failing to settle the claim within policy limits.[5] XL responded that no coverage existed under its policy for the underlying claim. XL initially cited Condition 7 as the basis for its coverage defense. Months later, XL for the first time mentioned Condition 2 and argued that no coverage existed because Lancer had failed to report the loss during the policy period.

The magistrate judge bifurcated the coverage issue from the bad faith issue and held a bench trial. The magistrate determined that, under Condition 2, no coverage existed under the policy because Lancer failed to report the claim in writing during the applicable policy period. The magistrate opined that, because

---

[5] Solar Time filed suit in state court; XL removed the action to federal district court.

the policy did not cover the claim, XL's failure to notify Lancer about the lack of coverage under Condition 2 did not constitute XL's waiver of its right to rely on lack of coverage. And the magistrate determined that Solar Time had no standing to assert that XL was estopped from denying coverage: Solar Time was not a party to the insurance contract and took no assignment of Lancer's rights under the policy.

Finally, the magistrate rejected Solar Time's attempt to invoke an exception to the rule "that the doctrines of waiver and estoppel will not operate to create coverage in an insurance policy where none originally existed." Cigarette Racing Team, Inc. v. Parliament Ins. Co., 395 So.2d 1238, 1239 (Fla. 4th Dist. Ct. App. 1981). The exception is that "when an insurance company assumes the defense of an action, with knowledge, actual or presumed, of facts which would have permitted it to deny coverage, it may be estopped from subsequently raising the defense of non-coverage." Id. at 1239-40. The magistrate noted (1) that Solar Time issued a reservation of rights letter, (2) that Solar Time not only wished to be placed "in the shoes of the insured" but in a better position than the insured, and (3) that the insured received no harm -- and received a benefit -- from the acts of the insurer, which provided a defense that the insured was not entitled to. The magistrate further determined that, because XL issued reservation of rights letters,

6

even though XL failed to mention Condition 2 in those letters, XL did not mislead Lancer into believing that coverage existed.

**DISCUSSION**

Solar Time argues that, because it obtained a judgment against Lancer in excess of Lancer's policy limit, it has standing to bring a Florida law third-party bad faith action against XL without an assignment from Lancer. Solar Time maintains that, as the injured party "standing in the shoes" of Lancer, it may assert that XL is estopped from denying coverage. And Solar Time argues that the district court erred in concluding that XL was not estopped from denying coverage: Solar Time asserts that XL created a false sense of security by failing to mention Condition 2 as a basis for denying coverage.

"We review de novo a district court's conclusions of law following a bench trial." Ogden v. Blue Bell Creameries U.S.A., Inc., 348 F.3d 1284, 1286 (11th Cir. 2003).

We initially affirm the magistrate judge's decision that no coverage existed under the terms of the policy. XL issued Lancer a claims-made policy: this policy only protects the insured against claims made and reported during the policy

period.  See St. Paul Fire & Marine Ins. Co. v. Barry, 98 S.Ct. 2923, 2926 n.3 (1978).  The loss of Solar Time's watch shipment occurred at the latest in August 1996.  Lancer's applicable claims-made policy ran until 31 December 1996.  But Lancer did not report the lost watch claim until June 1997: Lancer's policy did not cover this claim.  See Gulf Ins. Co. v. Dolan, Fertig & Curtis, 433 So. 2d 512, 515 (Fla. 1983) (with a claims-made policy, "if the claim is not reported during the policy period, no liability attaches").

We also affirm the magistrate judge's determination that XL was not estopped from raising a complete lack of coverage, under Condition 2, at such a late date.[6]  The general rule is that "estoppel may not be invoked to enlarge or extend the coverage specified in an insurance contract." Carneiro Da Cunha v. Standard Fire Ins. Co./Aetna Flood Ins. Program, 129 F.3d 581, 587 (11th Cir. 1997).  Florida recognizes an exception to this rule: "when an insurance company assumes the defense of an action, with knowledge, actual or presumed, of facts

[6] We note that some confusion exists in Florida law about whether Solar Time, as a third party judgment creditor of Lancer, had standing to argue that XL was estopped from denying coverage. See Gen. Sec. Ins. Co. v. Barrentine, 829 So. 2d 980, 983 (Fla. 1st Dist. Ct. App. 2002) (concluding that estate of person killed by insured in vehicle accident lacked standing to assert estoppel defense to insurer's denial of coverage to insured); but see Johnson v. Dawson, 257 So. 2d 282, 283-84 (Fla. 3d Dist. Ct. App. 1972) (writing that judgment creditor had standing to argue estoppel about insurance coverage against insurer of judgment debtor, but ultimately concluding that estoppel could not be used to create liability on the part of an insurer for loss not covered in the insurance policy). We need not decide the issue of standing: even assuming that Solar Time has standing, estoppel does not create coverage in this case.

which would have permitted it to deny coverage, it may be estopped from subsequently raising the defense of non-coverage. Whether the exception to the rule applies depends upon whether the insurer's assuming the defense prejudiced the one claiming to be insured." Doe v. Allstate Ins. Co., 653 So. 2d 371, 373 (Fla. 1995) (citations and internal quotation marks omitted).

Contrary to Solar Time's assertions, we discern no prejudice to Lancer, the insured, that resulted from XL's defense. As the magistrate judge noted, XL's failure to deny coverage resulted in Lancer receiving (1) the benefit of a defense -- at XL's cost and that Lancer was not entitled to -- for the full policy value and (2) $5,000 in appellate defense costs in exchange for Lancer's release of claims against XL.

Solar Time contends that Lancer was prejudiced because Lancer relied on XL to settle the case within the policy limits and, had XL denied coverage from the outset, Lancer could have attempted to settle with Solar Time to avoid an excess judgment. But Lancer's president testified that he relied on the law firm retained by XL to "represent him properly" and to "win" the case. Solar Time's suggestion that Lancer would have settled -- had XL earlier denied coverage -- is speculative. And we reject as irrelevant Solar Time's argument that it, too, was

9

prejudiced by XL's late denial of coverage: the inquiry under Florida law is on the prejudice to the insured, not a third party.

Further, XL issued reservation of rights letters. Although these letters mentioned Condition 7 and not Condition 2, the letters specifically noted that XL was not waiving any defenses or rights. Cf. Fla. Mun. Ins. Trust v. Village of Golf, 850 So. 2d 544, 547-48 (Fla. 4th Dist. Ct. App. 2003) (noting expert's testimony that, absent reservation of rights letter, "the insured receives a false sense of security"); Doe, 653 So. 2d at 372-74 (approving application of exception to rule that estoppel cannot create coverage where insurer had not issued reservation of rights letter); Cigarette Racing, 395 So. 2d at 1239-40 (same). Solar Time contends that by mentioning only Condition 7 as a possible coverage defense -- and not Condition 2 as a basis for denying coverage -- XL lulled Lancer into believing that coverage existed. But Solar Time points to no binding precedent applying the doctrine of estoppel when the insurer issues a reservation of rights letter that refers to a coverage defense but does not refer to a specific basis for a denial of coverage.

Finally, Solar Time correctly observes that Florida law allows "a third party to file a bad-faith claim directly against the liability insurer without an assignment by the insured upon obtaining a judgment in excess of the policy limits." State

10

Farm Fire & Cas. Ins. Co. v. Zebrowski, 706 So. 2d 275, 277 (Fla. 1997); see Fla. Stat. Ann. § 624.155(1)(b).  But the magistrate judge properly did not reach the issue of bad faith after it determined that no coverage existed.  See Gen. Star Indem. Co. v. Anheuser-Busch Cos., Inc., 741 So. 2d 1259, 1261 (Fla. 5th Dist. Ct. App. 1999) (writing that coverage and liability issues must be determined before a bad faith cause can be prosecuted).

In sum, the magistrate committed no error in determining (1) that no coverage existed under Lancer's policy with XL based on Lancer's failure to inform XL of the claim during the policy period, and (2) that XL was not estopped from raising a complete denial of coverage.[7]

**AFFIRMED.**

---

[7]  Before determining that no coverage existed under the policy, the magistrate initially had concluded that XL was precluded from denying coverage based on Lancer's failure to notify XL promptly of the claim: a breach of Condition 7.  The magistrate wrote that Lancer's late notice of the claim did not prejudice XL: and because XL suffered no prejudice from the late notice, XL thus was precluded from denying coverage based on a breach of Condition 7.  This determination is the subject of XL's cross-appeal.  But we have affirmed the magistrate's ultimate determination that no coverage existed: we need not address the arguments in XL's cross appeal on the preliminary determination about Condition 7.