960 So.2d 785 (2007)
Stacie WAGNER, Appellant,
v.
ORANGE COUNTY, Florida, et al., Appellees.
No. 5D06-3311.
District Court of Appeal of Florida, Fifth District.
June 15, 2007.
Rehearing Denied July 31, 2007.
*786 Dennis F. Wells, of Webb, Wells & Williams, P.A., Longwood, for Appellant.
Thomas B. Drage, County Attorney, and Joseph L. Passiatore, Senior Assistant County Attorney, Orange County Attorney's Office, Orlando, for Appellee, Orange County.
David B. Moffett, of Rissman, Barrett, Hurt, Donahue & McLain, P.A., Orlando, for Appellee, Rissman, et al.
PLEUS, C.J.
Stacie Wagner, plaintiff below, appeals from a final judgment which denied her action seeking access to records held by the defendants Orange County, Florida, and the County's outside law firm, Rissman, Barrett, Hurt, Donohue & McLain, P.A., (Rissman, Barrett). The issues on *787 appeal concern the interpretation of exemptions to the Public Records law contained at subsection 768.28(16)(b), and subsection 119.071(1)(d), Florida Statutes.
Wagner obtained a final judgment against Orange County in the amount of $900,880 in connection with the death of her 11-year-old daughter who was struck and killed by an Orange County Fire/Rescue vehicle. The County paid Wagner $100,000 pursuant to section 768.28, Florida Statutes, and Wagner has pursued the remainder of the judgment through a claim bill filed in the Florida legislature.
Prior to submission of the claim bill, Wagner's attorneys submitted two public records requests to review the litigation file held by the County's Risk Management Division and further sought, by way of public records request, the files of Rissman, Barrett, the private law firm which had represented the County in the wrongful death litigation. Both the County and Rissman, Barrett claimed privilege and exemption from production.
The trial court ultimately sided with the defendants, ruling that: (1) risk management claim files maintained by the County are exempt from production pursuant to a public records request based on a statutory exemption set forth in subsection 768.28(16)(b), and (2) the County's outside counsel was not required to produce its litigation file because of the protections afforded by subsection 119.071(1)(d), and Florida Rule of Civil Procedure 1.280(b)(5).
The issues in this case involve matters of statutory construction which are questions of law subject to de novo review. Maggio v. Fla. Dep't of Labor & Employment Sec., 899 So.2d 1074 (Fla.2005).
Subsection 768.28(16)(b), Florida Statutes, provides:
Claims files maintained by any risk management program administered by the state, its agencies and its subdivisions are confidential and exempt from the provisions of s. 119.07(1) and s. 24(a), Art. 1 of the State Constitution until termination of all litigation and settlement of all claims arising out of the same incident, although portions of the claims files may remain exempt, as otherwise provided by law. Claims files records may be released to other governmental agencies upon written request and demonstration of need; such records held by the receiving agency remain confidential and exempt as provided for in this paragraph.
The operative phrase of the subsection is "until termination of all litigation and settlement of all claims arising out of the same incident." Wagner maintains that this language exempts disclosure only during the litigation process and does not expressly encompass the claim bill process. Wagner points out that the Florida Constitution provides that the public shall have full access to government records and that while exemptions may be enacted by a two-thirds vote of each house of the legislature, Article 1, section 24, Florida Constitution, statutory exemptions restricting access to records are to be narrowly construed. WFTV, Inc. v. Sch. Bd. of Seminole County, 874 So.2d 48, 53 (Fla. 5th DCA 2004); Times Publ'g Co. v. State, 827 So.2d 1040, 1042 (Fla. 2d DCA 2002); Seminole County v. Wood, 512 So.2d 1000 (Fla. 5th DCA 1987).
The County maintains that the phrase "settlement of all claims arising out of the same incident," clearly encompasses a legislative claim bill and that alternatively, even if the language of subsection 768.28(16)(b) is ambiguous, the legislative intent underlying the enactment dictates that claims files be exempt from public records disclosure at least during the pendency of a claim bill.
*788 Analysis of this issue requires background on the nature of legislative claim bills. A claim bill is not an action at law, but rather is a legislative measure that directs the Chief Financial Officer of Florida, or if appropriate, a unit of local government, to pay a specific sum of money to a claimant to satisfy an equitable or moral obligation. Such obligations usually arise from the negligence of officers or employees of the State or local governmental agency. Legislative claim bills are utilized either after procurement of a judgment in an action at law or as a mechanism to avoid an action at law altogether. City of Miami v. Valdez, 847 So.2d 1005 (Fla. 3d DCA 2003). The amount awarded is based on the legislature's concept of fair treatment of a person who has been injured or damaged but who is without a complete judicial remedy or who is not otherwise compensable. Kahn, Legislative Claim Bills, Fla. B. Journal (April 1988). A claim bill is not obtainable by right upon the claimant's proof of entitlement, but rather is granted strictly as a matter of legislative grace. United Servs. Auto Ass'n v. Phillips, 740 So.2d 1205 (Fla. 2d DCA 1999). A claim bill must be presented to the legislature within four years "after the cause for relief accrued" and if a legislative relief act results, no additional claim for relief may be submitted to the legislature. § 11.065, Fla. Stat.
The legislature has set a cap on tort recovery from a governmental entity, in an action at law, at $100,000 per person and $200,000 per accident. § 768.28(5), Fla. Stat. Although an "excess" judgment may be entered, the statutory caps make it impossible, absent a special claim bill passed by the legislature, for a claimant to collect more than the caps provide. Breaux v. City of Miami Beach, 899 So.2d 1059 (Fla.2005).
The beneficiary of a claim bill recovers by virtue of its enactment, regardless of whether the governmental tortfeasor purchased liability insurance for the purpose of paying an excess judgment. Phillips. However, where the governmental tortfeasor has liability insurance in excess of $100,000, and the claimant receives compensation in excess of that statutory cap through a claim bill, the claim bill is paid with funds of the insured, not general revenue. Fla. Mun. Ins. Trust v. Village of Golf, 850 So.2d 544 (Fla. 4th DCA 2003). In other words, enactment of a claim bill may conceivably implicate available insurance in excess of the $100,000 cap contained in the statutory waiver of sovereign immunity.
Once a legislative claim bill is formally introduced, a special masters' hearing, quasi-judicial in nature, is conducted.[1]See Kahn, at 26. This hearing may at times resemble a trial during which the claimant offers testimony as well as documentary and physical evidence necessary to establish the claim. Trial records may be substituted for witness testimony. Witnesses who testify are sworn and subject to cross examination. Kahn, at 26. The responding agency may contest the claim and present its defense following the customary order of proof[2] and the special master is ultimately tasked with the responsibility of preparing a written report containing an *789 advisory recommendation to the Legislature. Kahn, at 26-27.
It is evident from this background that a legislative claim bill is truly a claim for relief and as such is included in the phrase "settlement of all claims arising out of the same incident." The absence of the term "bill" after the word "claims" does not remove claim bill proceedings from the ambit of the exemption from disclosure. A claim bill is by its very nature a "claim," though it is one pursued not in the courts, but rather in the legislature. Nothing in subsection 768.28(16)(b) acts to limit "claims" to judicial proceedings. The legislature encompassed more than just judicial proceedings by including the phrase "and settlement of all claims arising out of the same incident" which clearly expands the meaning of the provision beyond just the "termination of all litigation." As the County points out:
When the language of a statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.
Campus Commc'n, Inc. v. Earnhardt, 821 So.2d 388 (Fla. 5th DCA 2002). See also Critical Intervention Serv., Inc. v. City of Clearwater, 908 So.2d 1195 (Fla. 2d DCA 2005) (in construing exemption in public records statute relating to identity of security system permit holders, court emphasized "one of the most fundamental rules of statutory construction is that a court must give a statutory term its plain and ordinary meaning").
This conclusion that claim bills are within the scope of the exemption from disclosure contained in subsection 768.28(16)(b) fully comports with the legislative intent underlying the exemption. The legislature, in enacting the exemption for risk management files, explained:
[T]he public good served by not so exempting is far outweighed by the public harm that would result from such disclosure. If such records and meetings were not exempt, claimants would have unfettered access to, for example, the State's evidence, negotiation strategies, and claim evaluation and settlement considerations; thus, the amount of the awards and settlements paid out by the State, its agencies and subdivisions, and ultimately the taxpayer, would increase dramatically.
Furthermore, release of such information to the public serves no public purpose (e.g., monitoring the adequacy of agency investigations and reasonableness of settlement positions) which could not be otherwise accomplished upon completion of all litigation and settlement claims when the records become publicly available.
Ch. 94-76, § 2, Laws of Fla.
These considerations apply equally to claim bill proceedings which may be vigorously contested by the governmental agency.
Wagner relies on Seminole County v. Wood, supra, but other than its recounting of the general principle that public records exemptions are to be narrowly construed, that decision has little application to this issue. In that case, Seminole County was withholding four "closed litigation files." The case predates enactment in 1994 of the exemption contained in subsection 768.28(16)(b) and Seminole County asserted two grounds for non-disclosure: the attorney-client privilege contained in section 90.502, Florida Statutes (1985), and subsection 119.07(3)(o), Florida Statutes (1985), the Public Records Act.
This Court ruled that the records belong to the governmental entity and that the *790 attorney-client privilege enjoyed by the County was superseded by the Public Records Act. As to that Act, the Court explained that by its terms, the exemption from disclosure for litigation files contained in subsection 119.07(3)(o) applied "until the conclusion of the litigation or adversarial administrative proceedings," which had occurred. Subsection 768.28(16)(b) is significantly broader in providing for the exemption from disclosure until "termination of all litigation and settlement of all claims arising out of the same incident. . . ." In this case, unlike in Wood, there is a pending claim bill arising out of the same incident.
Wagner asserts that under this interpretation of subsection 768.28(16)(b), the County can keep its files secret forever since if no claim bill is approved, the claim is not "settled." We disagree. A claim bill must be filed within four years "after the cause for relief accrued," and if a relief act results, no further claim may be pursued. § 11.065, Fla. Stat. Once the limitations period for filing a claim bill expires, or if a bill is filed and relief results, "termination of all litigation and settlement of all claims arising out of the same incident" has occurred. At that point, the exemption from disclosure, by its language and logic, ends.
We have considered whether the statutory exemption more properly ends at the conclusion of that portion of the claim bill proceedings involving the special master, but conclude that such a construction is not warranted by the language of subsection 768.28(16)(b) and further could lead to absurd consequences. For example, to have proceedings before a special master which lead to an advisory recommendation and then, prior to legislative consideration, permit wholesale disclosure of previously exempt materials could seriously devalue the contested proceedings and accompanying advisory recommendation. It would be senseless to conduct such contested proceedings which result in an advisory recommendation knowing that additional evidence will be released after such proceedings and recommendation are completed. It is elementary that a statute should be read to avoid absurd results. Bostic v. State, 902 So.2d 225 (Fla. 5th DCA 2005).
The trial court denied Wagner access to Rissman, Barrett's documents identified in the law firm's privilege log filed with the trial court on the basis of subsection 119.071(1)(d), Florida Statutes, and Florida Rule of Civil Procedure 1.280(b)(5). Under subsection 119.071(1)(d), the records of an attorney, including private counsel for the government, are exempt from public records disclosure until the "conclusion of the litigation or adversarial administrative proceedings":
(d)1. A public record that was prepared by an agency attorney (including an attorney employed or retained by the agency or employed or retained by another public officer or agency to protect or represent the interests of the agency having custody of the record) or prepared at the attorney's express direction, that reflects a mental impression, conclusion, litigation strategy, or legal theory of the attorney or the agency, and that was prepared exclusively for civil or criminal litigation or for adversarial administrative proceedings, or that was prepared in anticipation of imminent civil or criminal litigation or imminent adversarial administrative proceedings, is exempt from s. 119.07(1) and s. 24(a), Art. I of the State Constitution until the conclusion of the litigation or adversarial administrative proceedings. For purposes of capital collateral litigation as set forth in s. 27.7001, the Attorney General's office is entitled to claim *791 this exemption for those public records prepared for direct appeal as well as for all capital collateral litigation after direct appeal until execution of sentence or imposition of a life sentence.
2. This exemption is not waived by the release of such public record to another public employee or officer of the same agency of any person consulted by the agency attorney. When asserting the right to withhold a public record pursuant to this paragraph, the agency shall identify the potential parties to any such criminal or civil litigation or adversarial administrative proceedings. If a court finds that the document or other record has been improperly withheld under this paragraph, the party seeking access to such document or record shall be awarded reasonable attorney's fees and costs in addition to any other remedy ordered by the court.
Wagner argues that the term "adversarial administrative proceedings" does not encompass the claim bill process which is a creature of the legislature. Wagner reiterates that an exemption from public record disclosure is to be construed narrowly and limited to its stated purpose. Seminole County v. Wood, 512 So.2d at 1002 (involving "closed litigation files").
The County begins by noting that handwritten drafts or notes generated by an attorney which are not intended as final evidence of the knowledge to be recorded have been held not to even qualify as a "public record."
In Johnson v. Butterworth, 713 So.2d 985 (Fla.1998), the Florida Supreme Court expressly approved this view in explaining that a "public record" is any material prepared in connection with official agency business which is intended to perpetuate, communicate of formalize knowledge of some type. The court contrasted this with materials prepared as drafts or notes, which constitute mere precursors of governmental "records." Thus, to the extent Wagner seeks drafts or notes generated by Rissman, Barrett which are "mere precursors of governmental records," such documents are not public records.
In considering whether other documents on Rissman, Barrett's privilege log enjoy exemption from public records disclosure, the County argues that the language "conclusion of the litigation or adversarial administrative proceedings," encompasses claim bill proceedings. Unlike the language in subsection 768.28(16)(b), which, in using the term "claims," clearly encompasses a claim bill, the language here requires deeper consideration. Does "conclusion of the litigation" include within it post-judgment collection efforts which is what a claim bill, filed in connection with an "excess judgment," would seem to constitute? Wagner appears to suggest that "conclusion of the litigation" occurs when final judgment is entered, but at common law, privileges such as attorney-client and work-product are applicable to post-judgment collection efforts. See, e.g., Hamilton v. Ramos, 796 So.2d 1269 (Fla. 4th DCA 2001); Paston v. Wiggs Contracting Co., Ltd., Inc., 698 So.2d 933 (Fla. 4th DCA 1997).
The legislature is presumed to know existing law when it enacts a statute. Holmes County Sch. Bd. v. Duffell, 651 So.2d 1176 (Fla.1995). That being so, the legislature's use of the phrase "conclusion of the litigation" encompasses post-judgment collection efforts, which include the claim bill filed here.
This analysis does not impermissibly expand the exemption from disclosure contained in subsection 119.071(1)(d). Rather, it effectuates the purpose and intent of the exemption which was stated in City of *792 Orlando v. Desjardins, 493 So.2d 1027, 1029 (Fla.1986):
[T]he statutory exemption now in effect well accommodates the competing interests in the confidentiality of the attorney-client relationship and government in the sunshine under the Public Records Act by providing a temporary exemption from disclosure. The exemption also brings the statute into accordance with Florida Rule of Civil Procedure 1.280(b)(2).
As the County asserts, it strains credulity to believe that the legislature intended to provide attorney-client and work-product protection during a civil case where tort liability is capped at $100,000 but to withdraw such protection during collection efforts arising out of the same claim, particularly where, as here, significantly more financial exposure is involved.[3] Our construction further has the salutary effect of interpreting the exemption in subsection 119.071(1)(d) consistent with that contained in subsection 768.28(16)(b), Florida Statutes.[4]See Prof'l Plastering & Stucco, Inc. v. Bridgeport-Strasberg Joint Venture, 940 So.2d 444 (Fla. 5th DCA 2006) (statutory provisions should be construed in harmony with each other).
The trial court correctly denied Wagner access to the litigation records held by Orange County and Rissman, Barrett, relating to Wagner's wrongful death action.
AFFIRMED.
ORFINGER and EVANDER, JJ., concur.
NOTES
[1] Both the House and Senate each appoint a special master though the special master for the house in which the claim bill is first filed usually takes primary jurisdiction in the subsequent bicameral hearing process. Kahn, at 26.
[2] While verdict-based excess judgments are typically treated more generously by the legislature, the legislative procedure requires a re-determination of liability and damages from the first dollar because the expenditure of public funds is implicated. Kahn, at 27.
[3] The parties alternatively contest whether the claim bill process qualifies as an "adversarial administrative proceeding" during which the exemption from disclosure continues. The claim bill process includes quasi-judicial, adversarial proceedings before a special master but the process is not an administrative proceeding. It is a purely legislative proceeding, though one in which the legislature employs certain processes resembling that found typically in an administrative setting.
[4] The County and the trial court's reliance on Florida Rule of Civil Procedure 1.280(b)(5), as offering an independent basis for non-disclosure, is unavailing. That provision states:

(5) Claims of Privilege or Protection of Trial Preparation Materials. When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.
Because the legislature has adopted the Florida Rules of Civil Procedure for special master hearings on claim bills, see Kahn, at 26, the County argues that Rule 1.280(b)(5) affords a basis for the claim of exemption from public records disclosure of Rissman, Barrett's litigation files as represented by the privilege log. However, that rule cannot exempt from disclosure what the legislature has dictated is subject to disclosure. Wait v. Fla. Power & Light Co., 372 So.2d 420 (Fla.1979) (public records are available for public inspection unless the information fits under a specific legislatively-created exemption).