NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

KATHERINE A. CHMIELEWSKI and )
PAUL CHMIELEWSKI, as Personal )
Representative of the Estate of Chester J. )
Chmielewski, Deceased, )
                                     )
            Appellants, )
             )
v. )        Case No. 2D13-4923
             )
CITY OF ST. PETE BEACH, FLORIDA, )
a municipal corporation, )
             )
            Appellee. )
_____ )

Opinion filed August 27, 2014.

Appeal from the Circuit Court for Pinellas
County; Pamela A.M. Campbell, Judge.

Jennifer A. Winegardner of The Chase Law
Firm, Tallahassee; and M. Stephen Turner
and Leonard M. Collins of Broad & Cassel,
Tallahassee, for Appellants.

Susan H. Churuti of Bryant Miller Olive P.A.,
Tampa; and Elizabeth W. Neiberger of Bryant
Miller Olive, P.A., Tallahassee, for Appellee.

Michael J. Glazer and Steven M. Hogan of
Ausley McMullen, Tallahassee, for Amicus
Curiae The First Amendment Foundation,
Inc.

LaROSE, Judge.

Chester J. and Katherine A. Chmielewski, the original parties in this case,[1] appeal the trial court's order granting, with prejudice, the City of St. Pete Beach's motion to dismiss their complaint for failure to state a cause of action. The Chmielewskis had filed suit to secure the disclosure of public records. We have jurisdiction, see Fla. R. App. P. 9.030(b)(1)(A), and reverse.

The Chmielewskis own a home on subdivision property in the City near the Don Cesar hotel. In 2006, the Chmielewskis sued the City to quiet title to a beachfront parcel adjacent to their residential lot. About two years later, the Chmielewskis and the City settled the lawsuit through mediation. The City acknowledged the Chmielewskis as the fee simple owners of the disputed parcel. As owner of the nearby Don Vista Community Center, the City agreed that its ownership did not give "members of the general public the right to travel onto" the parcel now quiet titled to the Chmielewskis. The parties also agreed to the dismissal, with prejudice, of the quiet title lawsuit. The parties recognized that settlement of the lawsuit did not waive or relinquish any claims that either party "had, now has, or hereafter acquires against the other party." Finally, the parties agreed that any ambiguity regarding the meaning of the settlement agreement would be submitted to mediation. The parties'

---

[1]During the pendency of this appeal, Mr. Chmielewski died. We granted a motion for substitution of party and Paul Chmielewski, the parties' son and his father's personal representative, has been substituted in this matter. See Fla. R. Civ. P. 1.260(a).

- 2 -

settlement was memorialized in a stipulated final judgment entered by the trial court. [2]

So ended the quiet title lawsuit.

For purposes of our analysis, it is important to know that before settling

the quiet title lawsuit, the City engaged in private discussions with its counsel under

procedures specified in section 286.011(8), Florida Statutes (2008). Florida law is

solicitous of transparent government. Accordingly, as a general matter, meetings of

public bodies are open to the public. Section 286.011(8) provides a limited exception:

> (8) Notwithstanding the provisions of subsection (1), any board or commission of any state agency or authority or any agency or authority of any county, municipal corporation, or political subdivision, and the chief administrative or executive officer of the governmental entity, may meet in private with the entity's attorney to discuss pending litigation to which the entity is presently a party before a court or administrative agency, provided that the following conditions are met:
>
> (a) The entity's attorney shall advise the entity at a public meeting that he or she desires advice concerning the litigation.
>
> (b) The subject matter of the meeting shall be confined to settlement negotiations or strategy sessions related to litigation expenditures.
>
> (c) The entire session shall be recorded by a certified court reporter. The reporter shall record the times of commencement and termination of the session, all discussion and proceedings, the names of all persons present at any time, and the names of all persons speaking. No portion of the session shall be off the record. The court reporter's notes shall be fully transcribed and filed with the entity's clerk within a reasonable time after the meeting.
>
> (d) The entity shall give reasonable public notice of the time and date of the attorney-client session and the names of persons who will be attending the session. The session shall commence at an open meeting at which the persons

---

[2]Neither party appealed the final judgment. See Fla. R. App. P. 9.110(b).

> chairing the meeting shall announce the commencement and estimated length of the attorney-client session and the names of the persons attending. At the conclusion of the attorney-client session, the meeting shall be reopened, and the person chairing the meeting shall announce the termination of the session.
>
> (e) <u>The transcript shall be made part of the public record upon conclusion of the litigation</u>.

(Emphasis added.)

Such a meeting is a "shade meeting." <u>See</u> <u>Sch. Bd. of Duval Cnty. v. Fla. Pub. Co.</u>, 670 So. 2d 99, 99 (Fla. 1st DCA 1996). The parties before us agree on the limited purpose of a shade meeting. They also acknowledge that upon conclusion of the litigation discussed at the shade meeting, the transcript of the meeting is available for public review. The Chmielewskis' access to the shade meeting transcript is the center of the dispute before us. The City refuses to release it.

A bit more background information will be helpful. As we know, in settling the quiet title lawsuit, the parties agreed that members of the general public had no right to traverse the Chmielewskis' property. Our record also reflects that the City owned and leased out the community center. Activities at the community center attracted patrons who did not reside in the subdivision. Over time, the Chmielewskis observed patrons from the nearby community center traverse their property for beach access. Peace eluded the City and the Chmielewskis. About a year after settling the quiet title lawsuit, the Chmielewskis sued the City for inverse condemnation based on the continuous use of their property by patrons of the community center. In the inverse condemnation lawsuit, they sought the shade meeting transcript from the now concluded quiet title law suit. The City balked. The Chmielewskis then filed a public records request. <u>See</u> § 119.07, Fla. Stat. (2009). The City refused to release the transcript, arguing that the

- 4 -

quiet title action lived on. The City posited that the transcript remained exempt from public disclosure.

A third lawsuit followed. The Chmielewskis filed a complaint seeking disclosure of public records. See § 119.11. The City moved to dismiss the complaint because the shade meeting transcript remained exempt from disclosure.[3] The City argued that because the quiet title settlement provided for further mediation should a dispute arise about the meaning of the agreement, the case was not concluded for purposes of section 286.011(8)(e).

The trial court dismissed the public records lawsuit. It ruled that the facts and issues of both lawsuits were alike, even though the legal theories differed. The trial court found the quiet title lawsuit to be "still pending," thus rendering the transcript "not subject to disclosure as a matter of law." This was error.

What is remarkable about the City's posture is that the mere potential for postjudgment enforcement proceedings could indefinitely shield a shade meeting transcript from public eyes, long after the underlying lawsuit ends. Unfortunately, the City offers no meaningful standard to determine when a lawsuit is over. We have no reason to doubt that with the entry of a final judgment disposing of the quiet title lawsuit, that action ended. See Wagner v. Orange Cnty., 960 So. 2d 785, 791 (Fla. 5th DCA 2007) (noting that conclusion of the litigation generally occurs when final judgment is entered). The City cannot seriously contend that any member of the public could not have rightfully demanded the shade meeting transcript shortly after entry of the final

---

[3]The City also filed various postjudgment motions in the quiet title action to consolidate that action with the inverse condemnation case. The trial court denied the motions. Other motions by the City attempted to enforce the prior settlement agreement as applicable to the condemnation case.

judgment. Apparently fearing some unarticulated maleficent use of the shade meeting transcript, the City urges secrecy. But the legislature has already drawn the boundary line; upon conclusion of a lawsuit, the shade meeting transcript becomes public.

The City's posture calls for an unwarranted expansion of a limited legislative exemption to the release of public records. It ignores Justice Brandeis' maxim that "[s]unlight is said to be the best of disinfectants." Buckley v. Valeo, 424 U.S. 1, 67 n.80 (1976) (citing [Louis D.] Brandeis, Other People's Money [& How the Bankers Use It] 62 (Nat'l Home Library Found. 1933) (1914)). In light of the legislative language, we cannot agree with a position that makes the operation of government opaque. See Bd. of Pub. Instruction of Broward Cnty. v. Doran, 224 So. 2d 693, 699 (Fla. 1969) (noting that such matters as secret meetings and closed records have "become synonymous with 'hanky panky' in the minds of public-spir[i]ted citizens"); Canney v. Bd. of Pub. Instruction of Alachua Cnty., 278 So. 2d 260, 264 (Fla. 1973) ("If the board or agency feels aggrieved, then the remedy lies in the halls of the Legislature and not in efforts to circumvent the plain provisions of the statute by devious ways in the hope that the judiciary will read some exception into the law."); City of Fort Myers v. News-Press Pub. Co., Inc., 514 So. 2d 408, 411 (Fla. 2d DCA 1987) (same). Our duty is to construe public records legislation in favor of open records; exemptions from disclosure are construed narrowly and limited to their designated purpose. See Lightbourne v. McCollum, 969 So. 2d 326, 332-33 (Fla. 2007) (addressing the public records act, sections 119.01-.15); Zorc v. City of Vero Beach, 722 So. 2d 891 (Fla. 4th DCA 1998) (addressing the Sunshine Law, section 286.011); Seminole Cnty. v. Wood, 512 So. 2d 1000, 1001 (Fla. 5th DCA 1987) (addressing closed litigation files).

The City must demonstrate the applicability of a statutory exemption. See Lightbourne, 969 So. 2d at 333; Barfield v. Sch. Bd. of Manatee Cnty., 135 So. 3d 560, 562 (Fla. 2d DCA 2014); Rameses, Inc. v. Demings, 29 So. 3d 418, 421 (Fla. 5th DCA), review denied, 47 So. 3d 1290 (Fla. 2010). We resolve any doubt in favor of disclosure. See Morris Publ'g Grp., LLC v. Fla. Dep't of Educ., 133 So. 3d 957, 960 (Fla. 1st DCA 2013). Our review of what constitutes a public record is de novo. Id. at 959; Bruckner v. City of Dania Beach, 823 So. 2d 167 (Fla. 4th DCA 2002) (applying the same standard of review to section 286.011 cases).

The City claims that when the Chmielewskis filed the inverse condemnation lawsuit, it invoked the mediation process contained in the quiet title settlement agreement. Thus, the City characterizes the matter at hand as an enforcement proceeding stemming from the settlement of an earlier lawsuit. Not so. Nothing in that settlement can be interpreted to suggest that the quiet title lawsuit is still open, ongoing, or capable of being reopened as to ownership of the disputed parcel.[4] Indeed, the parties requested and received a final judgment that ended the quiet title lawsuit except for executory provisions of the agreement. See Wagner, 960 So. 2d at 791. Unlike the City, we can discern no meaningful connection between a lawsuit that established the Chmielewskis' ownership of a parcel of land and a subsequent lawsuit alleging a government taking, through inverse condemnation, of their property.

---

[4]Paragraph 6 of the agreement merely provides that in the event of an ambiguity regarding the meaning of the agreement, the parties will submit such issues to the mediator for a further mediation conference. It goes on to provide that no such mediation conference is required to enforce the clear terms and conditions of the agreement. The condemnation lawsuit presents no question of an ambiguity in the agreement.

- 7 -

The City relies on <u>Wagner</u> to support its position. <u>Wagner</u> found exempt from disclosure certain items based on attorney-client privilege or work-product doctrine. <u>Wagner</u> involved postjudgment collection efforts including a legislative claims bill relating to the settlement of a wrongful death action. <u>Id.</u> at 786-87. The City's reliance on <u>Wagner</u> is wholly misplaced. It offers us no pen to expand an exemption to public disclosure. <u>See</u> <u>Seminole Cnty.</u>, 512 So. 2d at 1001-02 (explaining that the public records act supersedes lawyer-client privilege; the legislature, not the supreme court, regulates disclosure of such records) (citing <u>City of N. Miami v. Miami Herald Publ'g Co.</u>, 468 So. 2d 218 (Fla. 1985), and <u>Neu v. Miami Herald Publ'g Co.</u>, 462 So. 2d 821 (Fla. 1985)); <u>see also</u> <u>State v. Coca-Cola Bottling Co. of Miami, Inc.</u>, 582 So. 2d 1, 2 (Fla. 4th DCA 1990) (reiterating that only the legislature can create such an extended exemption); Op. Att'y Gen. Fla. 13-13 (2013) (advising that section 286.011(8)(e) does not recognize a continuation of the exemption for "derivative claims" made in separate, subsequent litigation and such an exemption cannot be read into the statute).

The shade meeting transcript became a matter of public record upon the conclusion of the quiet title action through entry of a final judgment. The transcript does not regain "secret" status just because a new tangentially related lawsuit is filed.

Reversed and remanded with directions to the trial court to order the City to disclose the shade meeting transcript.


ALTENBERND and CRENSHAW, JJ., Concur.