754 So.2d 852 (2000)
DOMINION OF CANADA, Appellant,
v.
STATE FARM FIRE AND CASUALTY COMPANY and Sally Ruth Johnson, Appellees.
No. 2D98-2405.
District Court of Appeal of Florida, Second District.
April 7, 2000.
*854 Matthew R. Danahy of Rywant, Alvarez, Jones, Russo & Guyton, Tampa, for Appellant.
David J. Lonigro of Oxendine & Oxendine, P.A., Tampa, for Appellee State Farm Fire and Casualty Company.
H. Irene Higginbotham of Kevin W. Korth & Associates, St. Petersburg, for Appellee Sally Ruth Johnson.
NORTHCUTT, Judge.
Dominion of Canada, a Canadian insurance company, challenges the dismissal with prejudice of its lawsuit against Sally Ruth Johnson and State Farm Fire and Casualty Company. Dominion sought subrogation, indemnification and declaratory relief to recover a payment it had made to its insureds under an uninsured motorist policy in order to preserve its subrogation rights. We conclude that Dominion's action should not have been dismissed in its entirety.
On March 1, 1993, Canadian residents Albert and Lucille Mitchel were riding bicycles in Seminole, Florida, when they were struck by an automobile driven by Johnson. Johnson had motor vehicle liability coverage with State Farm, and the Mitchels had uninsured motorist insurance issued by Dominion. When State Farm agreed to tender its $20,000 policy limits to settle the claims, the Mitchels' counsel, pursuant to section 627.727(6), Florida Statutes (Supp.1992), asked for Dominion's permission to accept the settlement. Dominion elected not to permit the release of the tortfeasor. It paid the Mitchels the proposed settlement amount in order to preserve its subrogation rights under the statute.[1] Dominion made the payment under cover letter dated April 6, 1994.
In February 1995, the Mitchels filed suit against Johnson and Dominion in Canada, but our record suggests that no summons and complaint were served on the defendants. In December 1995, the Mitchels' Canadian solicitor informed Dominion's adjuster that the Mitchels had decided not to pursue their claim and had allowed it to lapse. Dominion contacted State Farm to advise that it would seek reimbursement of its payment to the Mitchels. State Farm failed to pay.
On January 8, 1998, Dominion filed a multi-count suit against Johnson and State Farm. In count I, entitled "Action to Recover Monies Paid Pursuant to Florida Statute § 627.727(6)(B)," Dominion asserted that it was entitled to subrogation against Johnson and State Farm pursuant to the statute. Count II sought common law indemnity from Johnson. Count III was an action against Johnson and State Farm for subrogation pursuant to the subrogation clause of the Mitchels' uninsured motorist insurance policy. Count IV prayed for declaratory relief as to Dominion's entitlement to reimbursement from State Farm and Johnson. Both Johnson and State Farm moved to dismiss, asserting that the statute of limitations barred Dominion's claims. In particular, the defendants argued that Dominion was required to sue them within four years of *855 March 1, 1993, the date of the accident. The circuit court entered judgment dismissing the action with prejudice, holding that the complaint on its face established that the statute of limitations on a subrogation claim expired before the filing of the complaint.
As an initial matter, we note that the statute of limitations did not bar the indemnification count. See Scott & Jobalia Const. Co., Inc. v. Halifax Paving, Inc., 538 So.2d 76, 79 (Fla. 5th DCA 1989) (holding that four-year limitation period on indemnification claim does not commence until the party seeking indemnification has paid a judgment, or has made a voluntary payment of its legal liability to an injured party), approved, 565 So.2d 1346 (Fla. 1990); Minis Crane Serv., Inc. v. Insley Mfg. Corp., 226 So.2d 836, 840 (Fla. 2d DCA 1969). But we agree with the circuit court that the elements of such an action were not met here. "Indemnity is a right which inures to one who discharges a duty owed by him, but which, as between himself and another, should have been discharged by the other and is allowable only where the whole fault is in the one against whom indemnity is sought." Houdaille Industries, Inc. v. Edwards, 374 So.2d 490, 492 (Fla.1979). Importantly, the right derives from a special relationship between the parties which has obligated one party to pay because of its vicarious, constructive, derivative or technical liability for the wrongful acts of the other. See id.; Dade County School Board v. Radio Station WQBA, 731 So.2d 638 (Fla.1999).
Here, Dominion paid to preserve a right arising from its contractual relationship with the Mitchels. It did not pay pursuant to a duty arising from any relationship it had with Johnson or State Farm. In the absence of some such relationship, Dominion had no cause of action for indemnity. See Dade County School Board, 731 So.2d 638.
Dominion argues that the substantial revisions to section 627.727(6)(b) in 1992 compel a determination that its subrogation counts were timely. Specifically, Dominion refers to statutory language providing that "thereafter, upon final resolution of the underinsured motorist claim, the underinsured motorist insurer is entitled to seek subrogation against the underinsured motorist and the liability insurer for the amounts paid to the injured party." § 627.727(6)(b). From this language Dominion infers that its right to file a subrogation action did not accrue until final resolution of the uninsured motorist claim and that, therefore, the limitations period did not commence until that event. Although we disagree with Dominion's reasoning, we conclude that its action should not have been dismissed in its entirety.
Subrogation is the right of a party which has paid the indebtedness of another to assume the position of the original creditor. The subrogee is deemed to "stand in the shoes" of the subrogor. Florida law recognizes two forms of subrogation. "Contractual" or "conventional" subrogation is founded on a contract between the parties that the party paying the debt will have the rights and remedies of the original creditor. See Dade County School Board, 731 So.2d at 646; Phoenix Ins. Co. v. Florida Farm Bureau Mut. Ins. Co., 558 So.2d 1048, 1050 (Fla. 2d DCA 1990). "Equitable" or "legal" subrogation arises not from contract, but from the legal consequences of the acts and relationships of the parties; whether a party qualifies as a subrogee depends on a weighing of the equities. See Dade County School Board, 731 So.2d 638; Dantzler Lumber & Export Co. v. Columbia Cas. Co., 115 Fla. 541, 551, 156 So. 116, 120 (1934).
There is another difference between the two. The limitations period for filing a contractual subrogation claim commences when the original creditor's cause of action accrues. See Attorneys' Title Ins. Fund, Inc. v. Punta Gorda Isles, Inc., 547 So.2d 1250 (Fla. 2d DCA 1989). Therefore, a party contractually subrogated *856 to the rights of a negligence plaintiff must file its subrogation action within four years from the date of the accident giving rise to the subrogor's injury. See Allstate Ins. Co. v. Metro. Dade County, 436 So.2d 976 (Fla. 3d DCA 1983). On the other hand, the limitations period for filing an equitable subrogation action begins at the time the subrogee makes payment to the subrogor. See Allstate, 436 So.2d at 978-979; Kala Investments, Inc. v. Sklar, 538 So.2d 909, 916 n. 4 (Fla. 3d DCA 1989).
Dominion's interpretation of the statutory language quoted above would alter the nature of the subrogation rights referred to in the statute in a significant way, in that it would create yet a third category of subrogation cases for purposes of the statutes of limitations. In situations governed by the statute, the period for filing a subrogation action would not commence until the uninsured motorist claim was resolved, thus permitting the subrogee to sue for enforcement of the tortfeasor's liability long after the limitations period for either a contractual or equitable subrogation action had expired.
We do not believe the legislature intended to alter subrogation rights in this way. Section 627.727(6)(a) provides that upon notification of a proposed settlement an uninsured motorist carrier has thirty days to "consider authorization of the settlement or retention of subrogation rights." (Emphasis supplied.) Subsection (b) contemplates that the uninsured motorist insurer may choose to "preserve its subrogation rights" by paying its insured the amount of the proposed settlement. (Emphasis supplied.) The common meaning of those concepts is that one "retains" or "preserves" a thing as it is; a thing that is "retained" or "preserved" is not thereby transformed into something else.
Moreover, enhancement of the uninsured motorist insurer's subrogation rights as espoused by Dominion would have been outside the intended purpose and scope of the statute. When amending section 627.727(6), the legislature resolved the financial dilemma of an injured party whose acceptance of needed settlement funds is precluded by his uninsured motorist carrier's election to preserve its subrogation rights. See State Farm Mut. Auto. Ins. Co. v. Hassen, 650 So.2d 128 (Fla. 2d DCA 1995), approved, 674 So.2d 106 (Fla.1996). The amended statute shifts the financial burden of that election from the insured to the insurer.
The legislation thus operated narrowly to address a single issue between the injured party and his uninsured motorist carrier. Expanding the scope of the statute to affect rights of tortfeasors would run counter to its purpose. Merely by making a settlement offer, a tortfeasor and his liability carrier would risk extending the period during which they may be exposed to liability. It is difficult to imagine that when endeavoring to facilitate an injured party's ability to accept a settlement offer, the legislature intended to enact a disincentive to the very making of an offer. Nothing in the statute or in its legislative history suggests as much.
In our view, the last sentence of subsection (6)(b) is a permissive provision, reflecting the legislature's intention that after an uninsured motorist insurer has paid its insured the amount of the proposed settlement, it is entitled to "seek subrogation." The sentence contemplates that the uninsured motorist insurer would do so after the claimant's uninsured motorist claim is finally resolved. But it does not impose the latter as a condition precedent to the former, nor employ language to the effect that no action for subrogation may be filed until then. Cf. § 766.104(1), Fla. Stat. (1997)[2]; §§ 766.106(2) and (3), Fla. *857 Stat. (1997)[3]; § 768.28(6)(a), Fla. Stat. (1997).[4]
We conclude that Dominion's action, filed more than four years after its subrogors' accident, was properly dismissed insofar as it sought contractual subrogation. See Allstate, 436 So.2d 976. However, count I of Dominion's complaint may be susceptible of amendment to allege a claim for equitable subrogation. See Dade County School Board, 731 So.2d 638; West American Ins. Co. v. Yellow Cab Co. of Orlando, Inc., 495 So.2d 204 (Fla. 5th DCA 1986). When a complaint appears amenable to amendment to state a proper cause of action, it should not be dismissed with prejudice without first affording the plaintiff an opportunity to amend. See Williams v. Sebring Housing & Development, 723 So.2d 359 (Fla. 2d DCA 1998). Therefore, on remand Dominion should be given that opportunity.
Affirmed in part, reversed in part, remanded for further proceedings.
PATTERSON, C.J., and GREEN, J., Concur.
NOTES
[1] The parties did not address, and we do not decide, whether a Canadian insurance company was required to comply with Florida uninsured motorist law.
[2] "No action shall be filed for personal injury or wrongful death arising out of medical negligence... unless the attorney filing the action has made a reasonable investigation as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant."
[3] "(2) ... [P]rior to filing a claim for medical malpractice, a claimant shall notify each prospective defendant ... by certified mail, return receipt requested, of intent to initiate litigation for medical malpractice."

"(3)(a) No suit may be filed for a period of 90 days after notice is mailed to any prospective defendant."
[4] "An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also ... presents such claim in writing to the Department of Insurance ... and the Department of Insurance or the appropriate agency denies the claim in writing...."