969 So.2d 403 (2007)
METROPOLITAN CASUALTY INSURANCE COMPANY, Appellant,
v.
Robert TEPPER, et al., Appellees.
No. 5D06-3713.
District Court of Appeal of Florida, Fifth District.
October 19, 2007.
Rehearing Denied November 28, 2007.
*404 Michael M. Bell and Mary Grace Dyleski, of Bell, Leeper & Roper, P.A., Orlando, for Appellant.
Edward E. Haenftling, Jr., of Edward Haenftling, Jr., P.A., and Chobee Ebbets of Chobee Ebbets, P.A., Daytona Beach, for Appellee Angel M. Lucas.
No Appearance for Appellee Robert Tepper.
EVANDER, J.
Metropolitan Casualty Insurance Company timely appeals from an order that dismissed defendant Angel Lucas from a lawsuit filed by Metropolitan's insured, Robert Tepper. We affirm the order of dismissal, but reverse the trial court's finding that Metropolitan could bring a third-party action against Lucas.
On May 13, 2004, Tepper was riding his bicycle when he was hit by a vehicle owned and operated by Lucas. He subsequently filed a two-count complaint against Lucas and Metropolitan. In Count I, Tepper asserted a negligence claim against Lucas. In Count II, Tepper sought to recover uninsured/underinsured (UM) benefits from Metropolitan.[1] The complaint alleged that Tepper had suffered serious and *405 permanent injuries as the result of Lucas' negligence. Lucas and Metropolitan each filed an answer and affirmative defenses.
Lucas' insurance carrier tendered its policy limits of $25,000 to Tepper as full settlement of Tepper's claim against Lucas. Metropolitan did not grant Tepper permission to accept the settlement offer. Instead, Metropolitan paid Tepper $25,000 and preserved its subrogation rights against Lucas. Metropolitan's letter to Tepper provided:
Please be advised that at this time, we are substituting the funds of the tort feasor's insurance carrier, and hereby retain our subrogation rights. Please find our check enclosed for the amount of their coverage limits.
Tepper accepted the funds tendered by Metropolitan. Lucas subsequently filed a motion to dismiss the count of the complaint directed to Lucas. In her motion, Lucas argued that Tepper had "constructively or actually assigned his rights as against Lucas to Metropolitan and it is Metropolitan that has the right to sue Lucas and not [Tepper]."
Over Metropolitan's objection, the trial court granted Lucas' motion to dismiss. In its order, the trial court stated that if Lucas was to be a part of the proceedings, "it would have to be based upon a third party action brought by Metropolitan." The trial court denied Metropolitan's subsequent motion for rehearing and this appeal ensued. Tepper has not participated in the appellate proceedings and apparently did not oppose Lucas' motion to dismiss.
We begin our analysis by rejecting Lucas' argument that Metropolitan does not have standing to appeal the trial court's decision to dismiss Tepper's complaint against Lucas. Generally, a party has standing to challenge a trial court's order when it has a sufficient interest at stake in the controversy which will be affected by the outcome of the litigation. Gieger v. Sun First Nat'l Bank of Orlando, 427 So.2d 815, 817 (Fla. 5th DCA 1983). Here, the trial court's order implicitly addresses Metropolitan's subrogation rights against Lucas and expressly addresses its rights as a potential third-party plaintiff. Therefore, we find that Metropolitan has standing to appeal the trial court's order.
Metropolitan makes three arguments on appeal. First, Metropolitan contends that the trial court erred in "looking beyond the four corners" of Tepper's complaint. As a general rule, a trial court may not consider matters outside the four corners of the complaint in deciding a motion to dismiss. Winter v. Miami Beach Healthcare Group, Ltd., 917 So.2d 973 (Fla. 3d DCA 2005). However, we find Metropolitan has waived this argument. There is no indication that this issue was ever presented to the trial court. (It clearly was not raised in Metropolitan's four-page motion for rehearing.) Furthermore, Metropolitan does not dispute the facts that were relevant to the resolution of Lucas' motion to dismiss. A trial court is not bound by the four corners of the complaint where the facts are undisputed and the motion to dismiss raises only a pure question of law. Ground Improvement Techniques, Inc. v. Merchants Bonding Co., 707 So.2d 1138 (Fla. 5th DCA 1998).
Second, Metropolitan argues that the trial court's order directly conflicts with the requirements set forth in section 627.727(6), Florida Statutes (2004). Section 627.727(6)(a)[2] provides that if an injured *406 person is willing to accept a settlement offer from the alleged tortfeasor, but such settlement would not fully satisfy the personal injury claim so as to create a UM claim, the injured party must give written notice of the proposed settlement to his or her UM insurer. If the UM insurer authorizes settlement or fails to respond as required by subsection (6)(b), the injured party may proceed to execute a full release in favor of the alleged tortfeasor and the alleged tortfeasor's liability insurer without prejudice to any UM claim. Subsection (6)(b) provides the UM carrier with the means to preserve its subrogation rights against the alleged tortfeasor even if it denies its insured permission to settle with the tortfeasor. To do so, the UM carrier must pay its insured the amount of money offered by the tortfeasor (or the tortfeasor's liability insurer).
If an underinsured motorist insurer chooses to preserve its subrogation rights by refusing permission to settle, the underinsured motorist insurer must, within 30 days after receipt of the notice of the proposed settlement, pay to the injured party the amount of the written offer from the underinsured motorist's liability insurer. Thereafter, upon final resolution of the underinsured motorist claim, the underinsured motorist insurer is entitled to seek subrogation against the underinsured motorist and the liability insurer for the amounts paid to the injured party.
§ 627.727(6)(b), Fla. Stat. (2004).
In this case, it is undisputed that Metropolitan chose the option authorized by subsection (6)(b). Metropolitan refused to grant Tepper permission to settle his claim against Lucas, but instead preserved its subrogation rights against Lucas by timely paying Tepper the amount of money offered by Lucas' liability insurer.
Metropolitan contends that the operation of subsection (6)(b) did not extinguish Tepper's claim against Lucas and thus, the motion to dismiss should not have been granted. We agree with Metropolitan's assertion that Tepper's acceptance of the $25,000 from Metropolitan did not fully extinguish his claim against Lucas. By paying Tepper the $25,000, Metropolitan had the right to bring a subrogation action against Lucas for the $25,000 plus any UM benefits subsequently paid by Metropolitan to Tepper. Tepper would have the right to pursue Lucas for the remainder of any judgment obtained against Lucas which was in excess of the total amount he ultimately received from Metropolitan. However, nothing in subsection (6)(b) required Tepper to pursue his claim against Lucas if he was willing to forego seeking damages in excess of the sum of $25,000 offered by Lucas (but paid by Metropolitan) and the limits of his UM policy.
The pre-1992 version of section 627.727(6)[3] required an injured party to *407 jointly sue the alleged tortfeasor and the UM carrier even when the UM carrier denied its insured permission to accept a settlement offer from the alleged tortfeasor. Gov't Employees Ins. Co. v. Krawzak, 675 So.2d 115, 117-118 (Fla.1996). However, the 1992 amendment to section 627.727(6) "substantially alter[ed] the landscape of uninsured motorist law." Hassen v. State Farm Mut. Auto. Ins. Co., 674 So.2d 106, 109 (Fla.1996). The language requiring the injured party to jointly sue the alleged tortfeasor and the UM carrier was removed from the statute. As explained by the Florida Supreme Court in Krawzak, albeit, in dicta:
In 1992, the legislature amended section 627.727(6), and under the present statute, an action for UM coverage would solely be against the UM carrier.
675 So.2d at 118 n. 3 (emphasis added). Accordingly, we find the trial court did not err in granting Lucas' motion to dismiss where Tepper was apparently willing to forego seeking damages in excess of the sum of the limits of Lucas' liability policy and the limits of Tepper's UM policy.
We do conclude, however, that the trial court erred in finding that Metropolitan could bring a third-party action against Lucas. The last sentence of section 627.727(6)(b) specifically provides that a UM insurer is entitled to seek subrogation against the alleged tortfeasor (and its liability insurer) "upon final resolution of the underinsured motorist claim." Based on this clear and unambiguous language, we conclude that Metropolitan may not file a third-party action against Lucas, but, instead, must wait to bring a separate action against Lucas after final resolution of Tepper's UM claim.[4]
Metropolitan's third argument is that the trial court erred in granting the *408 motion to dismiss because Tepper's insurance policy required him to join the tortfeasor as a defendant in any action to recover UM benefits:
YOUR DUTY TO COOPERATE:
Under Uninsured and Underinsured Motorist coverage, we may require you to take appropriate action to preserve your right to recover damages from any other person responsible for the bodily injury. Also, in any lawsuit against us, we may require you to join the responsible party as a defendant.
Here, Tepper fully complied with this provision by joining Lucas and Metropolitan in his initial complaint. Tepper's decision to not oppose Lucas' motion to dismiss did not violate his contractual obligations, particularly given that Metropolitan had denied Tepper permission to accept Lucas' settlement offer and had acted to preserve its own subrogation rights.
In conclusion, except as to the finding that Metropolitan could bring a third-party action against Lucas, we affirm the order granting Lucas' motion to dismiss.
AFFIRMED, in part; REVERSED, in part; REMANDED.
GRIFFIN and ORFINGER, JJ., concur.
NOTES
[1] In his complaint, Tepper alleged that he had made a demand to Metropolitan for arbitration of the UM claim but Metropolitan had elected, pursuant to the terms of its policy, to be joined with the tortfeasor in the subject action.
[2] Section 627.727(6)(a), Florida Statutes (2004) provides:

If an injured person or, in the case of death, the personal representative agrees to settle a claim with a liability insurer and its insured, and such settlement would not fully satisfy the claim for personal injuries or wrongful death so as to create an underinsured motorist claim, then written notice of the proposed settlement must be submitted by certified or registered mail to all underinsured motorist insurers that provide coverage. The underinsured motorist insurer then has a period of 30 days after receipt thereof to consider authorization of the settlement or retention of subrogation rights. If an underinsured motorist insurer authorizes settlement or fails to respond as required by paragraph (b) to the settlement request within the 30-day period, the injured party may proceed to execute a full release in favor of the underinsured motorist's liability insurer and its insured and finalize the proposed settlement without prejudice to any underinsured motorist claim.
[3] Section 627.727(6), Florida Statutes (1991) provided:

If an injured person or, in the case of death, the personal representative agrees to settle a claim with a liability insurer and its insured for the limits of liability, and such settlement would not fully satisfy the claim for personal injuries or wrongful death so as to create an underinsured motorist claim against the underinsured motorist insurer, then such settlement agreement shall be submitted in writing to the underinsured motorist insurer, which shall have a period of 30 days from receipt thereof in which to agree to arbitrate the underinsured motorist claim and approve the settlement, waive its subrogation rights against the liability insurer and its insured, and authorize the execution of a full release. If the underinsured motorist insurer does not agree within 30 days to arbitrate the underinsured motorist claim and approve the proposed settlement agreement, waive its subrogation rights against the liability insurer and its insured, and authorize the execution of a full release, the injured person or, in the case of death, the personal representative may file suit joining the liability insurer's insured and the underinsured motorist insurer to resolve their respective liabilities for any damages to be awarded; however, in such action, the liability insurer's coverage must first be exhausted before any award may be entered against the underinsured motorist insurer, and any such award against the underinsured motorist insurer shall be excess and subject to the provisions of subsection (1). Any award in such action against the liability insurer's insured is binding and conclusive as to the injured person and underinsured motorist insurer's liability for damages up to its coverage limits. If an insurer has an arbitration clause in its policy and elects arbitration, the arbitration decision is binding and the insurer has no recourse to civil action.
[4] We recognize that our decision requiring a separate action does not promote judicial efficiency because, absent settlement, the trial court may well be required to have two trials. We also agree that our decision increases the likelihood of inconsistent judgments. However, where legislative language is clear and unambiguous, we are not free to disregard such language. See Macola v. Gov't Employees Ins. Co., 953 So.2d 451, 457 (Fla.2006); Wagner v. Orange County, 960 So.2d 785, 789 (Fla. 5th DCA 2007).