2 So.3d 209 (2009)
METROPOLITAN CASUALTY INSURANCE COMPANY, Petitioner,
v.
Robert TEPPER, et al., Respondents.
No. SC07-2428.
Supreme Court of Florida.
January 30, 2009.
*210 Michael M. Bell and Mary Grace Dyleski of Bell, Roper & Kohlmyer, P.A., Orlando, FL, for Petitioner.
No Appearance for Respondent, Robert Tepper.
Charles W. Hall and Mark D. Tinker of Banker Lopez Gassler, P.A., St. Petersburg, FL, and Charles Chobee Ebbets of Ebbets, Armstrong & Traster, Daytona Beach, FL, for Respondent, Angel M. Lucas.
WELLS, J.
Metropolitan Casualty Insurance seeks review of the decision of the Fifth District Court of Appeal in Metropolitan Casualty Insurance Co. v. Tepper, 969 So.2d 403 (Fla. 5th DCA 2007), on the ground that it expressly and directly conflicts with a decision of the Second District Court of Appeal in Dominion of Canada v. State Farm Fire and Casualty Co., 754 So.2d 852 (Fla. 2d DCA 2000), on a question of law. We have jurisdiction, see art. V, § 3(b)(3), Fla. Const., and we approve the Fifth District's decision in Metropolitan.
This case involves interpretation of section 627.727, Florida Statutes (2004), and the timing of an underinsured motorist (UM) insurer's subrogation lawsuit. The Fifth District described the facts underlying this case as follows:
On May 13, 2004, [Robert] Tepper was riding his bicycle when he was hit by a vehicle owned and operated by [Angel] Lucas. [Tepper] subsequently filed a two-count complaint against Lucas and [against Tepper's underinsured motorist insurer,] Metropolitan. In Count I, Tepper asserted a negligence claim against Lucas. In Count II, Tepper sought to recover uninsured/underinsured (UM) benefits from Metropolitan. The complaint alleged that Tepper had suffered serious and permanent injuries as the result of Lucas'[s] negligence. Lucas and Metropolitan each filed an answer and affirmative defenses.

*211 Lucas'[s] insurance carrier tendered its policy limits of $25,000 to Tepper as full settlement of Tepper's claim against Lucas. [Tepper's insurer,] Metropolitan[,] did not grant Tepper permission to accept the settlement offer. Instead, Metropolitan paid Tepper $25,000 and preserved its subrogation rights against Lucas [as authorized by section 627.727(6), Florida Statutes].... Tepper accepted the funds tendered by Metropolitan. Lucas subsequently filed a motion to dismiss the count of the complaint directed to Lucas. In her motion, Lucas argued that Tepper had "constructively or actually assigned his rights as against Lucas to Metropolitan and it is Metropolitan that has the right to sue Lucas and not [Tepper]."
Over Metropolitan's objection, the trial court granted Lucas'[s] motion to dismiss. In its order, the trial court stated that if Lucas was to be a part of the proceedings, "it would have to be based upon a third party action brought by Metropolitan." The trial court denied Metropolitan's subsequent motion for rehearing and this appeal ensued. Tepper has not participated in the appellate proceedings and apparently did not oppose Lucas'[s] motion to dismiss.
Metropolitan, 969 So.2d at 404-05 (footnote omitted).
After the trial court granted Lucas's motion to dismiss Lucas from the case, Metropolitan appealed to the Fifth District. Id. Metropolitan argued that the trial court's order dismissing Lucas and stating that "if Lucas is to be a part of these proceedings based upon the present status of the case, it would have to be based upon a third party action brought by Metropolitan" was contradictory to the statutory language in section 627.727(6)(b), Florida Statutes (2004), which provides:
If an underinsured motorist insurer chooses to preserve its subrogation rights by refusing permission to settle, the underinsured motorist insurer must, within 30 days after receipt of the notice of the proposed settlement, pay to the injured party the amount of the written offer from the underinsured motorist's liability insurer. Thereafter, upon final resolution of the underinsured motorist claim, the underinsured motorist insurer is entitled to seek subrogation against the underinsured motorist and the liability insurer for the amounts paid to the injured party.
(Emphasis added.) Metropolitan argued that according to the emphasized language, its subrogation claim necessarily arises after the conclusion of Tepper's UM claim against Metropolitan, and thus the trial court was in error in concluding that any further participation by Lucas would be as a third-party defendant. Metropolitan contended that since Lucas could not be a third-party defendant, it had to follow that Lucas should continue to be a defendant in the action brought by Tepper so that the issues of liability and damages could be determined.
The Fifth District rejected Metropolitan's argument and held that the trial court had not abused its discretion. In reaching this conclusion, the Fifth District addressed the trial court's ruling that Metropolitan could bring a third-party action against Lucas. The Fifth District stated:
We do conclude, however, that the trial court erred in finding that Metropolitan could bring a third-party action against Lucas. The last sentence of section 627.727(6)(b) specifically provides that a UM insurer is entitled to seek subrogation against the alleged tortfeasor (and its liability insurer) "upon final resolution of the underinsured motorist claim." Based on this clear and unambiguous *212 language, we conclude that Metropolitan may not file a third-party action against Lucas, but, instead, must wait to bring a separate action against Lucas after final resolution of Tepper's UM claim.[n. 4]
[N. 4] We recognize that our decision requiring a separate action does not promote judicial efficiency because, absent settlement, the trial court may well be required to have two trials. We also agree that our decision increases the likelihood of inconsistent judgments. However, where legislative language is clear and unambiguous, we are not free to disregard such language. See Macola v. Gov't Employees Ins. Co., 953 So.2d 451, 457 (Fla.2006); Wagner v. Orange County, 960 So.2d 785, 789 (Fla. 5th DCA 2007).
Id. at 407. Thus, the Fifth District held: (1) that it was not error for the trial court to dismiss Lucas from the lawsuit where Tepper had apparently abandoned his claim against Lucas; and (2) Metropolitan could not bring a subrogation lawsuit against Lucas until after "final resolution of the uninsured motorist claim."
Metropolitan then petitioned this Court for review based on alleged express and direct conflict with the Second District's decision in Dominion of Canada. In Dominion of Canada, the Second District considered a case where Sally Ruth Johnson, the tortfeasor, drove her car into Albert and Lucille Mitchel. The tortfeasor's insurance carrier agreed to tender its $20,000 policy limits to the injured parties, the Mitchels, but the Mitchels' UM carrier opted instead to pay the Mitchels the $20,000 to preserve its subrogation rights under section 627.727.
The UM carrier, Dominion, later sought reimbursement of the $20,000 from the tortfeasor and her liability insurer. The tortfeasor and her liability insurer responded by arguing that the statute of limitations had run on Dominion's claim. Dominion countered that the statute of limitations had not expired because it had not started to run until "final resolution" of the UM claim between Dominion and the injured parties. To support its argument, Dominion cited section 627.727(6)(b)'s statement that "[t]hereafter, upon final resolution of the underinsured motorist claim, the underinsured motorist insurer is entitled to seek subrogation against the underinsured motorist and the liability insurer for the amounts paid to the injured party." § 627.727(6)(b), Fla. Stat. (2004) (emphasis added). Dominion argued that because it was only "entitled" to bring a subrogation claim against the tortfeasor "upon final resolution of the underinsured motorist claim," the statute of limitations on that subrogation claim could not have begun to run until then.
The Second District rejected Dominion's argument. The Second District explained its interpretation of section 627.727(6)(b), stating:
In our view, the last sentence of subsection (6)(b) is a permissive provision, reflecting the legislature's intention that after an uninsured motorist insurer has paid its insured the amount of the proposed settlement, it is entitled to "seek subrogation." The sentence contemplates that the uninsured motorist insurer would do so after the claimant's uninsured motorist claim is finally resolved. But it does not impose the latter as a condition precedent to the former, nor employ language to the effect that no action for subrogation may be filed until then. Cf. § 766.104(1), Fla. Stat. (1997); §§ 766.106(2) and (3), Fla. Stat. (1997); § 768.28(6)(a), Fla. Stat. (1997).
Dominion of Canada, 754 So.2d at 856-57 (footnotes omitted).
*213 In summary, Dominion of Canada held that the last sentence of section 627.727(6)(b) was merely permissive and that therefore section 627.727 did not require that the statute of limitations period begin to run only once the UM claim was resolved. Metropolitan, on the other hand, held that the last sentence of section 627.727(6)(b) was mandatory and that no subrogation cause of action between Metropolitan and Lucas could be brought until the UM claim was resolved. This Court is now presented with these conflicting interpretations of section 627.727 on discretionary review. We approve the Fifth District's decision in Metropolitan and disapprove the Second District's decision in Dominion of Canada to the extent it conflicts with this decision.

ANALYSIS
We have repeatedly stated that the central purpose of statutory interpretation is deciphering and giving effect to legislative intent. State v. J.M., 824 So.2d 105, 109 (Fla.2002) ("It is well settled that legislative intent is the polestar that guides a court's statutory construction analysis."); Carlile v. Game & Fresh Water Fish Com'n, 354 So.2d 362, 364 (Fla.1977) ("In determining the meaning of a statute we must look to the intent of the Legislature in enacting that statute."). That legislative intent is chiefly derived from the language of the statute itself. Tropical Coach Line, Inc. v. Carter, 121 So.2d 779, 782 (Fla.1960) ("If the language of the statute is clear and unequivocal, then the legislative intent must be derived from the words used without involving incidental rules of construction or engaging in speculation as to what the judges might think that the legislators intended or should have intended."); Joshua v. City of Gainesville, 768 So.2d 432, 435 (Fla.2000) ("When interpreting a statute and attempting to discern legislative intent, courts must first look at the actual language used in the statute.").
When a statute's language is plain and unambiguous, there can be no resort to statutory construction. Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 454-55 (Fla.1992) (citing numerous cases and concluding that "[t]he sum of these cases is that this Court is without power to construe an unambiguous statute"). This Court does not question the wisdom of a statute but instead applies the statute according to the Legislature's direction. Finally, this Court will only override the plain language of a statute "when there are cogent reasons for believing that the letter [of the statute] does not accurately disclose the [legislative] intent." State ex rel. Hanbury v. Tunnicliffe, 98 Fla. 731, 124 So. 279, 281 (1929).
Accordingly, we begin our analysis with the language of the statute. Section 627.727(6) (2004), subsections (a) and (b), Florida Statutes (2004), state:
(6)(a) If an injured person or, in the case of death, the personal representative agrees to settle a claim with a liability insurer and its insured, and such settlement would not fully satisfy the claim for personal injuries or wrongful death so as to create an underinsured motorist claim, then written notice of the proposed settlement must be submitted by certified or registered mail to all underinsured motorist insurers that provide coverage. The underinsured motorist insurer then has a period of 30 days after receipt thereof to consider authorization of the settlement or retention of subrogation rights. If an underinsured motorist insurer authorizes settlement or fails to respond as required by paragraph (b) to the settlement request within the 30-day period, the injured *214 party may proceed to execute a full release in favor of the underinsured motorist's liability insurer and its insured and finalize the proposed settlement without prejudice to any underinsured motorist claim.
(b) If an underinsured motorist insurer chooses to preserve its subrogation rights by refusing permission to settle, the underinsured motorist insurer must, within 30 days after receipt of the notice of the proposed settlement, pay to the injured party the amount of the written offer from the underinsured motorist's liability insurer. Thereafter, upon final resolution of the underinsured motorist claim, the underinsured motorist insurer is entitled to seek subrogation against the underinsured motorist and the liability insurer for the amounts paid to the injured party.

(Emphasis added.)
When considering the meaning of terms used in a statute, this Court looks first to the terms' ordinary definitions. Hanbury, 124 So. at 281 ("In the interpretation of statutes[,] words in common use are to be construed in their natural, plain, and ordinary signification, unless it appears they were used in a technical or other sense."). Those definitions may be derived from dictionaries. L.B. v. State, 700 So.2d 370, 372 (Fla.1997) ("[A] court may refer to a dictionary to ascertain the plain and ordinary meaning which the legislature intended to ascribe to the term.").
The common meaning of the terms used in section 627.727(6) supports the result that the Fifth District reached. In the first portion of section 627.727(6)(b), the statute explains that to preserve its UM subrogation rights, the UM carrier must pay the injured party  its insured  the amount the tortfeasor offered the injured party as a settlement. The statute then states:
Thereafter, upon final resolution of the underinsured motorist claim, the underinsured motorist insurer is entitled to seek subrogation against the underinsured motorist and the liability insurer for the amounts paid to the injured party.
§ 627.727(6)(b), Fla. Stat. (2004) (emphasis added).
The critical terms in the pertinent portion of section 627.727(6)(b) are "upon" and "entitled." "Upon" commonly means "on," "thereafter, thereon," and "on." Merriam-Webster's Collegiate Dictionary (11th ed.2005) ("on;" "thereafter, thereon"); American Heritage Dictionary (4th ed.2000) ("on"). The use of the word "entitle" commonly means "to furnish with proper grounds for seeking or claiming something," "[t]o furnish with a right or claim to something," and "[t]o grant a legal right to or qualify for." Merriam-Webster's Collegiate Dictionary (11th ed.2005) ("to furnish with proper grounds for seeking or claiming something"); American Heritage Dictionary (4th ed.2000) ("[t]o furnish with a right or claim to something"); Black's Law Dictionary (8th ed.2004) ("[t]o grant a legal right to or qualify for").
Reading the statute in light of these definitions, the statute plainly explains that it is only thereafter or on ("upon") the final resolution of the UM claim that the UM carrier has the right ("is entitled") to pursue its subrogation claim. The statute emphasizes that the UM carrier is only "entitled" to bring any such subrogation claim "upon" a certain action occurring. That certain action is the "final resolution of the underinsured motorist claim." Accordingly, the statutory language is plain in its requirement that the UM carrier is not entitled to bring a *215 subrogation claim until after the UM claim has reached "final resolution."
This Court's precedent on statutory construction also supports the Fifth District's interpretation of section 627.727(6). We have recognized that "the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless." State v. Goode, 830 So.2d 817, 824 (Fla.2002); see also Martinez v. State, 981 So.2d 449, 452 (Fla.2008) (repeating this quote). "[W]ords in a statute are not to be construed as superfluous if a reasonable construction exists that gives effect to all words." State v. Bodden, 877 So.2d 680, 686 (Fla.2004). Reading section 627.727(6) as permissive ignores the emphasized language "[t]hereafter, upon final resolution of the underinsured motorist claim, the underinsured motorist insurer is entitled to seek subrogation against the underinsured motorist." § 627.727(6)(b), Fla. Stat. (2004) (emphasis added). If the statute only stated "[t]hereafter, the underinsured motorist insurer is entitled to seek subrogation" then it would seem clear that the timeframe in which the UM carrier could seek subrogation was more flexible and tied only to the UM insurer first paying its insured to preserve its subrogation rights. However, the language "upon final resolution of the underinsured motorist claim" must be given meaning, and the most logical meaning of that language is to read it as imposing a condition precedent to the UM carrier's entitlement to bringing a subrogation claim. Accordingly, this canon of statutory construction supports the Fifth District's interpretation, and we approve Metropolitan.
Finally, we conclude that in view of the legislative modification of the time when the UM insurer can bring a subrogation action, the statute of limitations for bringing the subrogation action must likewise be modified. Therefore, we expressly hold that the statute of limitations for the bringing of a UM subrogation action  which cannot be brought until "final resolution of the underinsured motorist claim"  begins to run from the time of the final resolution of the UM claim. We disapprove of the decision of the Second District in Dominion of Canada, which is in conflict with this holding as to the time that the statute of limitations begins to run.

CONCLUSION
Because the language of section 627.727(6)(b) plainly states that an UM carrier "is entitled to seek subrogation" only "upon final resolution of the underinsured motorist claim," we conclude that the statute is mandatory, as the Fifth District held in Metropolitan. This result is supported by the plain language of the statute and our precedent on statutory interpretation. We further note that because section 627.727(6) affects the substantive rights of UM carriers by limiting their ability to bring a subrogation action until final resolution of the UM claim, the statute of limitations for UM carrier subrogation claims under the statute does not begin to run until final resolution of the UM claim. Accordingly, we disapprove Dominion of Canada to the extent it conflicts with this decision, approve Metropolitan, and remand for further proceedings consistent with this decision.
It is so ordered.
QUINCE, C.J., PARIENTE and CANADY, JJ., and ANSTEAD, Senior Justice, concur.
LEWIS, J., concurs in result only with an opinion.
POLSTON, J., concurs in part and dissents in part with an opinion.
*216 LEWIS, J., concurring in result only.
I cannot agree with the majority that the language of this statute is clear, plain, and unambiguous with regard to existing rights of common-law subrogation. The statute requires interpretation and construction to avoid serious problems. In my view, the majority has provided a necessary statutory interpretation and construction, including reference to an accrual of a cause of action for subrogation, that is necessary, correct, and essential for the valid application of this provision.
POLSTON, J., concurring in part dissenting in part.
I respectfully concur in part and dissent in part. I would dismiss the case because Metropolitan has taken inconsistent positions and because the Fifth District Court of Appeal's decision in Metropolitan Casualty Insurance Co. v. Tepper, 969 So.2d 403 (Fla. 5th DCA 2007), does not conflict with the Second District Court of Appeal's decision in Dominion of Canada v. State Farm Fire & Casualty Co., 754 So.2d 852 (Fla. 2d DCA 2000). On the merits, if it were appropriate to review this case, I would agree with the result of the majority's opinion to the extent it approves the Metropolitan decision, but would disagree that a condition precedent is required by a plain reading of section 627.727(6)(b), Florida Statutes (2004).

I. METROPOLITAN'S INCONSISTENT POSITIONS
Tepper, the injured plaintiff/insured brought an action against Lucas, the alleged tortfeasor (count I for negligence) and against Metropolitan (count II for UM benefits). Metropolitan, 969 So.2d at 404. After Metropolitan paid Tepper $25,000, the settlement offer by Lucas, and preserved its subrogation rights pursuant to section 627.727(6), Florida Statutes (2004), Lucas moved to dismiss Tepper's claim without objection from Tepper. Id. at 405. Although Metropolitan made no claim of its own against Lucas, it objected to the trial court's dismissal of Tepper's claim against Lucas. Id.
The trial court granted Lucas' motion to dismiss, stating that "[t]he court finds that if Lucas is to be a part of these proceedings based upon the present status of the case, it would have to be based upon a third party action brought by Metropolitan Casualty Insurance Company." The trial court did not permit Metropolitan to require Tepper's claim against Lucas to go forward when Tepper had no desire to do so and the policy language did not require it. The only remaining claim in the lawsuit was Tepper's UM claim against Metropolitan. Accordingly, the trial court noted that under the "present status of the case," if Metropolitan Casualty wanted to make Lucas "a part of these proceedings," it would have to bring a third-party action. The trial court did not rule on the merits of a third-party action not yet brought  that would have been premature. It simply stated that "if" Lucas was to be brought into this UM action, Metropolitan would need to initiate it through its own action rather than require Tepper to bring the claim. Metropolitan elected to not file a third-party claim under the trial court's ruling and instead appealed Lucas' dismissal. Accordingly, the third-party complaint was not brought, no legal defense to a third-party complaint under the statutory language of section 627.727(6)(b) was made, and the trial court never reached the merits of the meaning of section 627.727(6)(b).
On appeal to the Fifth District, Metropolitan made three arguments: (i) the trial court erred by looking beyond the four corners of the complaint when it granted *217 Lucas' motion to dismiss; (ii) the trial court's order directly conflicts with the requirements of section 627.727(6)(b); and (iii) the trial court erred in granting the motion to dismiss because the policy language required Tepper to join Lucas as a defendant. Id. at 405-08. It is the second issue, the interpretation of section 627.727(6)(b), that is before this Court and the basis of alleged conflict jurisdiction.
As the majority recognizes, Metropolitan argued in the Fifth District that the trial court erred by requiring it to bring a third-party action because the statute required its subrogation claim to be brought after the UM claim was concluded. Specifically, in its initial brief to the Fifth District, Metropolitan argued:
According to the clear language of [section 627.727(6)(b)], METROPOLITAN's subrogation claim, if any, necessarily arises after the conclusion of Tepper's UM claim against METROPOLITAN, not during the pendency of the UM claim.
The Trial Court essentially ordered that LUCAS could be brought back into the proceedings below, only as a third party defendant in an action brought by METROPOLITAN. According to the statute, however, the insurer's entitlement to a subrogation action against the tortfeasor and its insurer does not exist until after the UM claim is resolved. Thus, the statutory language refutes the Trial Court's conclusion below that any further participation by LUCAS in the pending UM claim would be as a third party defendant in an action brought by METROPOLITAN. The clear and unambiguous terms of the statute specifically contemplate that an action by the insurer against the tortfeasor arises only after the completion of the insured's UM claim against its insurer. Consequently, METROPOLITAN is not permitted under the statute to file a subrogation action or a third party action against LUCAS until TEPPER's UM claim against METROPOLITAN is resolved.
Initial Brief of Metropolitan Casualty Insurance Company at 11-12, Metro. Cas. Ins. Co. v. Tepper, 969 So.2d 403 (Fla. 5th DCA 2007) (emphasis added).
Although the Fifth District concluded that the trial court did not err by dismissing Lucas, it agreed with Metropolitan that the trial court erred in finding Metropolitan could bring a third-party action against Lucas. Metropolitan, 969 So.2d at 407. Metropolitan sought review in this Court, asserting that the Fifth District's opinion conflicted with the Second District's opinion in Dominion. In its jurisdictional brief, Metropolitan noted that the Fifth District concluded it could file an action against Lucas only after the final resolution of Tepper's underinsured motorist claim. Metropolitan Casualty Insurance Company's Jurisdictional Brief at 3. Metropolitan then noted that the Second District in Dominion held that the statutory provision is permissive and "does not preclude the institution of a subrogation action until after the underinsured claim is resolved." Id. No mention was made in Metropolitan's jurisdictional brief or in its initial brief to this Court that the Fifth District's opinion interpreted the statutory provision consistently with Metropolitan's argument to that court.
On appeal before this Court, Metropolitan now argues that the Fifth District erred (i) by dismissing Lucas from Tepper's claims and (ii) by concluding that a third-party action against Lucas could not be filed because the subrogation claim must wait until after final resolution of the UM claim. This second argument, interpreting section 627.727(6)(b), is contrary to the argument Metropolitan made to the Fifth District. Lucas answers Metropolitan's *218 initial brief by rejecting Metropolitan's "contention that it should be permitted to file a subrogation claim against LUCAS prior to the final resolution of TEPPER's UM claim.... The plain meaning of the emphasized text [from section 627.727(6)(b)] is that an insurer may not seek subrogation until after there has been a final resolution of the UM claim." Answer Brief of Respondent Angel Lucas at 9-10. This language is strangely almost identical to Metropolitan's initial brief to the Fifth District. Yet, Metropolitan, in its reply brief, states that "Florida Statute § 627.727(6)(b), contains no language prohibiting a UM carrier from seeking subrogation in a pending lawsuit." Metropolitan Casualty Insurance Company's Reply Brief at 4.
In short, the Fifth District ruled in favor of Metropolitan's legal position on whether it could file a third-party complaint against Lucas, but then Metropolitan has argued the opposite position to this Court. And "[t]he general rule is that a party cannot occupy inconsistent positions in the course of a litigation." Battles v. State, 919 So.2d 621, 622 (Fla. 1st DCA 2006) (quoting McPhee v. State, 254 So.2d 406, 409 (Fla. 1st DCA 1971)). Indeed, "where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it is to the prejudice of the party who has acquiesced in the position taken by him." Id. (quoting McPhee, 254 So.2d at 409-10 (quoting Fla. Jur. Estoppel & Waiver § 51)). Given this general rule, I would reject Metropolitan's inconsistent position taken to invoke the Court's conflict jurisdiction and discharge this case.

II. NO CONFLICT JURISDICTION ON STATUTE OF LIMITATIONS
Additionally, I would discharge this case because I fail to see the conflict jurisdiction. The majority opinion notes that this Court accepted jurisdiction based upon Metropolitan's alleged conflict between the Second District's opinion in Dominion and the Fifth District's underlying opinion in Metropolitan. However, the two district courts' decisions do not address the same question of law.
In Dominion, 754 So.2d at 855-56, the Second District analyzed different types of subrogation claims (contractual, equitable, and statutory) and noted that the commencement of the statute of limitations period differs on the types of claims. Dominion argued that "[i]n situations governed by the statute, the period for filing a subrogation action would not commence until the uninsured motorist claim was resolved, thus permitting the subrogee to sue for enforcement of the tortfeasor's liability long after the limitations period for either a contractual or equitable subrogation action had expired." Dominion, 754 So.2d at 856. The Second District described this as a third category of subrogation cases for purposes of the statutes of limitations, a category arising from the statutory language. Id. In reviewing the last sentence of section 627.727(6)(b), the Second District stated that "it does not impose the latter [final resolution of the UM claim] as a condition precedent to the former [seeking subrogation], nor employ language to the effect that no action for subrogation may be filed until then." Id.
The Second District concluded that Dominion's cause of action based on contractual subrogation rights was barred by the statute of limitations because it was filed more than four years after its subrogors' accident. Id. at 857. However, the Second District noted that count I of Dominion's complaint could be amended to allege a claim for equitable subrogation (that *219 would have a different statute of limitations commencement date), so the case was remanded to give Dominion the opportunity for amendment. Id.
The issue of whether a third-party action could be brought by a UM carrier, addressed in Metropolitan, was not at issue at all in Dominion. See Fla. R. Civ. P. 1.180(a) ("When [Third Party Practice] Available. At any time after commencement of the action a defendant may have a summons and complaint served on a person not a party to the action who is or may be liable to the defendant for all or part of the plaintiff's claim against the defendant, and may also assert any other claim that arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim.") (emphasis added). And, in contrast to Dominion, no statute of limitations issue was addressed in Metropolitan.
Simply stated, Dominion addressed a statute of limitations issue, while Metropolitan addressed a third-party action issue. Compare Dominion, 754 So.2d at 855 (addressing whether the trial court erred by "dismissing the action with prejudice, holding that the complaint on its face established that the statute of limitations on a subrogation claim expired before the filing of the complaint") with Metropolitan, 969 So.2d at 407 (addressing whether "the trial court erred in finding that Metropolitan could bring a third-party action against Lucas"). Therefore, the two decisions do not expressly and directly conflict on the same question of law, and this Court does not have jurisdiction to review this case. See art. V, § 3(b)(3), Fla. Const. (explaining that this Court has discretionary jurisdiction to review a district court decision "that expressly and directly conflicts with a decision of another district court of appeal ... on the same question of law"). Even if a conflict on the same question of law could be found somewhere in the four corners of the two decisions, the issues presented to the district courts were so different and raised in such different procedural postures that this Court should exercise its discretion to decline review.
My concern about this Court exercising jurisdiction despite a lack of conflict is amplified by the fact that the majority fails to confine its decision to the record and arguments in this case. No argument has been presented to the trial court, the Fifth District, or this Court relating to the statute of limitations. Yet, the majority "expressly hold[s] that the statute of limitations for the bringing of a UM subrogation action  which cannot be brought until `final resolution of the underinsured motorist claim'  begins to run from the time of the final resolution of the UM claim." Majority op. at 215. Respectfully, the majority opinion's holding goes well beyond anything at issue here. When the statute of limitations begins to run in this case has never been an issue, so it was not briefed. Yet, the Court has decided a very significant legal issue without a factual basis (Metropolitan has not yet asserted a subrogation claim at all  will it be contractual, equitable, statutory, or some variation?) or any legal argument by the parties. The Court should exercise more judicial restraint and not reach a statute of limitations issue not before it. This is simply not the case for this Court to disapprove of the Second District's holding in Dominion regarding statutes of limitations.
Moreover, in Metropolitan, the Fifth District did not hold that the statutory language imposes a condition precedent. It simply held that the language prohibited Metropolitan from filing a third-party action against Lucas and that Metropolitan was required to wait to bring a separate action against Lucas after final resolution of Tepper's UM claim. Metropolitan, 969 *220 So.2d at 407. Thus, neither Dominion nor Metropolitan held that the statutory language imposed a condition precedent as the majority has ruled.

III. MEANING OF SECTION 627.727(6)(b)
On the merits, I believe that the majority utilizes an improper plain meaning analysis to determine that resolution of a UM claim is a condition precedent to bringing a subrogation claim.
As the Second District accurately observed in Dominion, the Florida Legislature uses more plain language than what exists here when it wishes to impose a condition precedent. Dominion, 754 So.2d at 856-57 (noting that the statute does not impose final resolution as a condition precedent or employ language that no action for subrogation may be filed until then, listing examples). Importantly, the Legislature expressly utilizes "condition precedent" language throughout the Insurance Code, but it is conspicuously missing in section 627.727(6)(b). See e.g., § 624.155(3)(a), Fla. Stat. (2008) ("As a condition precedent to bringing an action under this section, the department and the authorized insurer must have been given 60 days' written notice of the violation."); § 627.4136(1), Fla. Stat. (2008) ("It shall be a condition precedent to the accrual or maintenance of a cause of action against a liability insurer by a person not an insured under the terms of the liability insurance contract that such person shall first obtain a settlement or verdict against a person who is an insured under the terms of such policy for a cause of action which is covered by such policy."); § 634.3284(3), Fla. Stat. (2008) ("As a condition precedent to bringing an action under this section, the department and the insurer shall be given written notice of the violation."). Even without using the exact phrase "condition precedent," the statute does not state that the subrogation claim can be brought "only" upon final resolution of the UM claim. See Sanders v. City of Orlando, 997 So.2d 1089, 1094 (Fla. 2008) ("We conclude that if the Legislature had intended for section 440.20(11)(c) to constitute an explicit exception, it would have been explicit...."). Accordingly, I do not agree that the Florida Legislature used plain language to create a condition precedent. See Fla. Wildlife Fed'n v. State Dep't of Envtl. Regulation, 390 So.2d 64, 67 (Fla. 1980) ("If the [Legislature had meant for the special injury rule to be preserved in the area of environmental protection, it could easily have said so.").
With section 627.727(6)(b), the Legislature stops short of making final resolution of the UM claim a substantive condition precedent to filing a subrogation claim. In this case, I agree that the statutory language would prohibit Metropolitan from bringing a third-party action because the UM policy does not provide otherwise. However, the absence of condition precedent language in section 627.727(6)(b) leaves open the possibility that contractual language could alter the timing of when a subrogation claim could be brought. See generally Bodden v. State Farm Mut. Auto. Ins. Co., 195 F.App'x 858 (11th Cir. 2006) (reviewing a UM policy requiring the insured to file a lawsuit against both the tortfeasor and UM carrier and to secure a judgment in that action). Reading a condition precedent requirement into the statute improperly eliminates the opportunity for parties to contractually modify the timing of a subrogation action to be consistent with when a third-party action is available pursuant to Florida Rule of Civil Procedure 1.180. See Fla. Farm Bureau Cas. Ins. Co. v. Cox, 943 So.2d 823, 832 (Fla. 1st DCA 2006) ("[I]nsurance policies are deemed to incorporate applicable statutes, and conflicting policy provisions must give *221 way."), quashed on other grounds, 967 So.2d 815 (Fla.2007).

IV. CONCLUSION
Because Metropolitan assumes inconsistent positions and because there is no express and direct conflict, I would dismiss on the basis that jurisdiction was improvidently granted. Moreover, the statute of limitations issue should not be addressed because it is beyond the scope of this case. On the merits, if it were appropriate to exercise jurisdiction, I would agree with the result of the majority's opinion to the extent it approves the Metropolitan decision, but would disagree that a condition precedent is required by a plain reading of section 627.727(6)(b).